[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-17683
Non-Argument Calendar
_____

D.C. Docket No. 8:16-cr-00002-JSM-AAS-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

NIDAL JABER,

Defendant-Appellant.


_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(March 15, 2018)

Before ED CARNES, Chief Judge, WILSON, and JORDAN, Circuit Judges.

PER CURIAM:

During an investigation into synthetic cannabinoid trafficking in Tampa,

Florida, law enforcement officers arrested Nidal Jaber and two men acting under his direction. Jaber pleaded guilty to conspiracy to distribute and possess with intent to distribute a mixture and substance containing a detectable amount of XLR-11, a synthetic cannabinoid and Schedule I controlled substance. See 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), 846. The district court sentenced him to 80 months imprisonment followed by three years of supervised release, a sentence that fell below his advisory guidelines range of 84 to 150 months imprisonment. Jaber contends that his sentence is procedurally and substantively unreasonable.

## I.

Because XLR-11 is not listed in either the drug quantity table or the drug equivalency table of the United States Sentencing Guidelines, the court calculated Jaber's base offense level using the marijuana equivalency ratio for tetrahydrocannabinol (THC), the listed substance that it found was most closely related to XLR-11. See United States Sentencing Guidelines § 2D1.1 cmt. 6 (Nov. 2016). [1] The equivalency table states that 1 gram of THC is equivalent to 167

---

[1] In drug trafficking cases the district court determines a defendant's base offense level by comparing the weight of a seized substance to weights listed in the drug quantity table. U.S.S.G. § 2D1.1(a)(5), (c). If the seized substance is not listed in the drug quantity table, then the court looks to the drug equivalency table, which includes several additional controlled substances and provides a marijuana equivalency ratio for each. Id. § 2D1.1 cmt. 8(A), (D). By applying the listed ratio to the weight of a seized substance, the court can use the equivalent weight of marijuana to determine a defendant's base offense level. Id. If the seized substance is not listed in either the drug quantity table or the drug equivalency table, then the court uses the marijuana equivalency ratio for the listed substance that is most closely related to the seized substance. Id. § 2D1.1 cmt. 6.

2

grams of marijuana.  Id. § 2D1.1 cmt. 8(D).

The district court applied that 1:167 ratio to the weight of XLR-11 seized during Jaber's arrest.  That resulted in a base offense level of 26.  Jaber received a 2-level enhancement for his leadership role in the conspiracy and a 3-level reduction for his acceptance of responsibility, resulting in a total offense level of 25.[2]  With a criminal history category of IV, Jaber's guidelines range was 84 to 105 months imprisonment.

At his sentence hearing, Jaber objected to the comparison of XLR-11 to THC and the use of the 1:167 ratio.  He introduced the expert testimony of Dr. Daniel Buffington, who opined that the government had insufficient data to support the assumption that XLR-11 is similar to THC or to support the 1:167 ratio.

In response the government called Drug Enforcement Administration drug-science specialist, Dr. Cassandra Prioleau.  She testified that although the DEA performed no clinical human studies of XLR-11, data gleaned from animal and test-tube studies and from emergency room visits by people who had consumed XLR-11 supported the government's conclusion that XLR-11 is most closely related to THC.  But she admitted that she did not know how the government

---

[2] The presentence investigation report recommended holding Jaber accountable for around 5,868 grams of XLR-11, which would have increased his total offense level 2 points to 27.  At the sentence hearing the government agreed to a lower weight, and the district court adopted a total offense level of 25.

established the 1:167 ratio listed in the guidelines.

The court overruled Jaber's objection and accepted the 1:167 ratio and the recommended guidelines range as a starting point. But it allowed Jaber to argue that the court should consider the weakness of the ratio when it fashioned his sentence. Jaber then argued for a downward variance citing again the lack of scientific evidence to support the 1:167 ratio and his low risk of recidivism.

After considering the advisory guidelines, Jaber's arguments, and the 18 U.S.C. § 3553(a) factors, the court sentenced Jaber to 80 months imprisonment followed by three years of supervised release. At the same hearing the court sentenced one of Jaber's codefendants to five years of probation (his guidelines range was 30 to 37 months imprisonment) and the other co-defendant to 18 months imprisonment followed by two years of supervised release (his guidelines range was 37 to 46 months imprisonment). Jaber raised no new objections. This is his appeal.

## II.

We review the reasonableness of a sentence for abuse of discretion, Gall v. United States, 552 U.S. 38, 41, 128 S. Ct. 586, 591 (2007), and "[t]he party challenging the sentence bears the burden to show it is unreasonable in light of the record and the § 3553(a) factors," United States v. Tome, 611 F.3d 1371, 1378 (11th Cir. 2010). We review a district court's fact findings for clear error and the

court's application of the guidelines with due deference, which is "tantamount to clear error review." United States v. Rothenberg, 610 F.3d 621, 624 (11th Cir. 2010).

A.

A sentence is procedurally unreasonable if the "district court improperly calculates the [g]uidelines range." United States v. Gonzalez, 550 F.3d 1319, 1323 (11th Cir. 2008). Jaber contends that his sentence is procedurally unreasonable because the court calculated his base offense level using the marijuana equivalency ratio for THC. When a controlled substance is not listed in the guidelines' drug equivalency table, the court looks to the most closely related listed substance. U.S.S.G. § 2D1.1 cmt. 6. To determine which listed substance is most closely related to the substance at issue, the court considers whether the two drugs: (1) have a substantially similar chemical structure, (2) have substantially similar psychologic effects, and (3) require a similar quantity to produce a similar effect. Id. Jaber argues that the court clearly erred by finding that XLR-11 is most closely related to THC because there are no clinical human studies comparing the potency and effects of XLR-11 and THC.[3] We disagree.

---

[3] Jaber argues that "there is not support for finding that XLR-11 is a Schedule 1 substance." But during his sentence hearing, Jaber's attorney withdrew that issue, admitting that he could not in "good faith" make that argument. As a result the district court did not decide the issue, and Jaber waived any argument that XLR-11 was improperly classified as a Schedule 1 drug. See United States v. Cobb, 842 F.3d 1213, 1222 (11th Cir. 2016) ("[A] defendant waives a sentencing objection where he expressly withdraws the objection before the district court.").

5

Dr. Prioleau testified that none of the substances listed in the drug equivalency table have a chemical structure substantially similar to XLR-11, so she relied on the second and third factors for her determination. She stated that data from animal studies showed that animals given XLR-11 responded as if they were given THC. And data from test-tube studies showed that XLR-11 binds to and activates human cannabinoid receptors in the same way as THC. Dr. Prioleau also explained that the DEA did not perform human clinical studies because the FDA found that XLR-11 has no known medical use. And she testified that even though there were no human clinical studies, those studies were not necessary because the animal, test-tube, and anecdotal human studies allowed her to extrapolate data to humans.

Although Dr. Buffington disagreed with her conclusion and testified that animal and test-tube studies were insufficient, the district court did not clearly err in believing Dr. Prioleau. See United States v. Saingerard, 621 F.3d 1341, 1343 (11th Cir. 2010) ("Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.") (quotation marks omitted); United States v. Chastain, 198 F.3d 1338, 1348 (11th Cir. 1999) ("The district court's decision on the competency of, and the weight to be accorded to, the testimony of an expert is a highly discretionary one."). And because Dr. Prioleau's testimony supports the court's finding that XLR-11 is most closely

6

related to THC, that finding was not clearly erroneous. See Saingerard, 621 F.3d at 1343.

Jaber also contests the 1:167 ratio itself, arguing that the ratio is unsupported by scientific evidence and that it does not reflect the THC content of natural marijuana. But "the absence of empirical evidence is not an independent ground that compels the invalidation of a guideline." United States v. Snipes, 611 F.3d 855, 870 (11th Cir. 2010). Instead the guidelines, including marijuana equivalency ratios, are advisory, and a lack of empirical evidence is one of several factors that a district court may consider in choosing to deviate from the recommended range and in calculating a reasonable sentence. Kimbrough v. United States, 552 U.S. 85, 109–11, 128 S. Ct. 558, 575–76 (2007) (explaining that guidelines conversion ratios are advisory and a district court may consider a ratio's propriety when it renders a reasonable final sentence).

The district court did not clearly err by relying on the 1:167 ratio for THC to calculate Jaber's guidelines range. See Gonzalez, 550 F.3d at 1323.

B.

Jaber next contends that his sentence is substantively unreasonable because the 1:167 ratio resulted in an impermissibly excessive sentence, because the court did not properly account for his low risk of recidivism, and because his variance is disproportionate to the variances of his codefendants.

7

"We examine whether the sentence is substantively reasonable in light of the totality of the circumstances and the 18 U.S.C. § 3553(a) factors." United States v. Cavallo, 790 F.3d 1202, 1232 (11th Cir. 2015).   Generally "[i]t is sufficient that the district court considers the defendant's arguments at sentencing and states that it has taken the § 3553(a) factors into account." United States v. Sanchez, 586 F.3d 918, 936 (11th Cir. 2009).

The district court considered Jaber's arguments and the § 3553(a) factors at the sentence hearing and based on his arguments chose to vary downward from the guidelines range.  The court was permitted to vary downward because it disagreed with the guidelines, but contrary to Jaber's argument, it was not required to vary more than it thought was reasonable.  See Kimbrough, 552 U.S. at 110–11, 128 S. Ct. at 575–76; United States v. Shaw, 560 F.3d 1230, 1238 (11th Cir. 2009) ("[A] district court has 'considerable discretion' in deciding whether the § 3553(a) factors justify a variance and the extent of one that is appropriate.").

Jaber also argues that the court improperly considered his criminal history and did not give adequate weight to his old age and remorse.  That argument fails. To fashion a reasonable sentence, the court must consider the "history and characteristics of the defendant," which includes a history of criminal acts.  18 U.S.C. § 3553(a)(1).  The district court found that Jaber's prior insurance-fraud convictions suggested that he might reoffend despite his age and his claims of

remorse.  Given that history the court did not abuse its discretion by concluding that 80 months imprisonment — which was below Jaber's guidelines range — was a reasonable sentence.  See Shaw, 560 F.3d at 1237; cf. United States v. Hunt, 526 F.3d 739, 746 (11th Cir. 2008) (noting that we usually expect a sentence within the guidelines range to be reasonable).

Jaber argues that his sentence is unreasonable because he received a smaller variance than his codefendants.  See 18 U.S.C. § 3553(a)(6) (stating that one factor to be considered in imposing a sentence is "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct").  Because Jaber did not object to his sentence on that basis we review for plain error only.  See United States v. Vandergrift, 754 F.3d 1303, 1307 (11th Cir. 2014).  Under plain error review Jaber must show that (1) the district court erred; (2) the error was plain; (3) the error affected his substantial rights; and (4) the error "seriously affects the fairness, integrity, or public reputation of judicial proceedings."  United States v. Doyle, 857 F.3d 1115, 1118 (11th Cir. 2017).

The court did not err by applying a smaller variance to Jaber's sentence.  "A well-founded claim of disparity . . . assumes that apples are being compared to apples."  United States v. Docampo, 573 F.3d 1091, 1101 (11th Cir. 2009) (quotation marks omitted).  Jaber acknowledges that he played a leadership role in

9

the conspiracy and that he has a more significant criminal history than his codefendants. Those facts show that Jaber and his codefendants did not have "similar records" and were not "found guilty of similar conduct." See 18 U.S.C. § 3553(a)(6); see also Cavallo, 790 F.3d at 1237 ("[D]isparity between the sentences imposed on codefendants is generally not an appropriate basis for relief on appeal.") (quotation marks omitted).

**AFFIRMED.**