[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-12181
_____

D.C. Docket No. 2:10-cr-00278-JHH-HGD-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus


ANTHONY EUGENE DOYLE,

Defendant-Appellant.


_____

Appeal from the United States District Court
for the Northern District of Alabama
_____

(May 25, 2017)

Before ED CARNES, Chief Judge, JILL PRYOR, and RIPPLE,[*] Circuit Judges.

ED CARNES, Chief Judge:

In the pre-Booker era, we presumed prejudice from a district court's failure to ask a defendant if he had anything to say before sentence was pronounced, except in one circumstance. The exception was where the defendant was sentenced at the low end of the applicable mandatory guidelines range. United States v. Quintana, 300 F.3d 1227, 1232 (11th Cir. 2002). The question before us is whether that low-end exception to a presumption of prejudice still applies in the post-Booker, advisory guidelines era. If it does, the defendant before us is not entitled to be resentenced with an opportunity to allocute; but if the exception no longer applies, he is entitled to be.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Anthony Doyle pleaded guilty to possessing with intent to distribute more than fifty grams of a substance containing a detectable amount of cocaine base, a violation of 21 U.S.C. § 841(a)(1). He was subject to a statutory mandatory minimum sentence of ten years and a maximum sentence of life imprisonment. Id. § 841(b)(1)(A).

At the sentence hearing in December 2011, the district court determined that Doyle's adjusted offense level was 34 and that he had a criminal history category

---

[*] Honorable Kenneth F. Ripple, United States Circuit Judge for the Seventh Circuit, sitting by designation.

of VI.  That yielded an advisory guidelines range of 262 to 327 months.  The court asked Doyle's counsel if she had anything to say before the sentence was imposed, and she used the opportunity to argue (successfully, as it turned out) for a sentence at the low end of the advisory guidelines range.

The court did not, however, ask Doyle himself if he wished to make a statement (or allocute, as it is called), as sentencing courts are required to do.  See Fed. R. Crim. P. 32(i)(4)(a)(ii) ("Before imposing sentence, the court must: . . . address the defendant personally in order to permit the defendant to speak or present any information to mitigate the sentence . . . .").  Doyle's counsel did not object to the court's oversight.  Throughout the sentence hearing, Doyle made no statement other than to answer "[y]es, sir" to three questions the court put to him.[1]  The court sentenced Doyle to 262 months, which was the low end of the advisory guidelines range, as well as 96 months supervised release and a special assessment of $100.

Thereafter Doyle filed a pro se motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255, claiming that he had asked his former counsel to file a direct appeal but that she had failed to do so, that other aspects of counsel's performance constituted ineffective assistance of counsel, and that his sentence

---

[1] Doyle gave that two-word answer to the court's questions whether he understood the impact of his earlier convictions on his sentence, whether some earlier convictions were properly attributed to him, and whether he understood that he needed to tell his attorney within fourteen days if he wanted to appeal.

3

violated various statutes.  The court appointed new counsel to represent Doyle in his § 2255 proceeding.

Later the district court granted Doyle's § 2255 motion with respect to his failure to appeal claim but denied the motion insofar as the other claims were concerned.  Having found merit in the failure to appeal claim, the court ordered the remedy spelled out in our Phillips decision, which is to vacate the defendant's sentence and later re-impose the same sentence so that he can file what will then be a timely direct appeal.  United States v. Phillips, 225 F.3d 1198, 1201 (11th Cir. 2000).  Neither the district court nor this Court granted Doyle a certificate of appealability on the other § 2255 claims, the ones that had been rejected.

After the district court entered judgment on the § 2255 motion and vacated Doyle's original sentence as part of the Phillips remedy, it imposed the same sentence of 262 months imprisonment, 96 months supervised release, and a $100 special assessment.[2]  That gave Doyle the benefit of the Phillips remedy by allowing this direct appeal of his sentence (the same one that was re-imposed), including errors that may have been committed at his initial sentence proceeding, among which was the failure to provide him with an opportunity to allocute.

---

[2] After Doyle's original sentence was vacated and before it was re-imposed, his new counsel filed a list of objections to the original presentence investigation report and also submitted a sentencing memorandum.  The district court properly refused to consider those objections and the sentencing memorandum because the Phillips remedy is limited to permitting the defendant to file what would otherwise be an untimely appeal from the original sentence. See Phillips, 225 F.3d at 1201.  The procedure requires the district court to re-impose the same sentence as before, which can then be reviewed on appeal.  Id.

4

## II. ANALYSIS

The sole question before us is whether Doyle's sentence must be vacated because his right to allocute, as embodied in Federal Rule of Criminal Procedure 32(i)(4)(a)(ii), was violated.  We have described allocution as the right of the defendant to personally "make a final plea on his own behalf to the sentencer before the imposition of sentence."  United States v. Prouty, 303 F.3d 1249, 1251 (11th Cir. 2002).  And the Supreme Court has explained that because "[t]he most persuasive counsel may not be able to speak for a defendant as the defendant might, with halting eloquence, speak for himself," denial of allocution has been grounds for reversal in the common law world since the seventeenth century. Green v. United States, 365 U.S. 301, 304, 81 S. Ct. 653, 655 (1961) (plurality opinion).  There was, however, no objection in this case.

### A. THE PLAIN ERROR RULE

Because Doyle did not object at the sentence hearing to the district court's denial of his right of allocution, we review only for plain error.  Prouty, 303 F.3d at 1251.  We will reverse a district court's decision under the plain error rule only if "there is: (1) error, (2) that is plain, and (3) that affects substantial rights," and "if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings."  United States v. Rodriguez, 398 F.3d 1291, 1298 (11th Cir. 2005) (quotation marks omitted) (citing Fed. R. Crim. P. 52(b)).

5

As to the first requirement, the district court's failure to address Doyle personally about whether he wished to make a statement to the court was error. See, e.g., Prouty, 303 F.3d at 1252. And it was "plain," which is the second requirement. Id. We have held that if the allocution error affects the defendant's substantial rights, which is the third requirement, the fourth one — that the error "seriously affects the fairness, integrity, or public reputation of judicial proceedings" — is also met. United States v. Perez, 661 F.3d 568, 586 (11th Cir. 2011).

So the result in this appeal comes down to whether the denial of Doyle's right of allocution "affect[ed]" his "substantial rights." Rodriguez, 398 F.3d at 1298. If it did, we will reverse his sentence under the plain error rule; if it did not, we will affirm his sentence. See id. An error affects a defendant's substantial rights where it prejudiced him by "affect[ing] the outcome of the district court proceedings." Id. at 1299. Almost always the party who failed to object to the error has the burden of proving that he was prejudiced by it. See id. But not always.

## B. THE PRESUMPTION OF PREJUDICE

Before the Supreme Court's decision in United States v. Booker, 543 U.S. 220, 125 S. Ct. 738 (2005), the United States Sentencing Guidelines were

6

mandatory, "impos[ing] binding requirements on all sentencing judges." Id. at

233, 125 S. Ct. at 749–50.  Under the mandatory guidelines regime:

> A court could impose a sentence outside the applicable guidelines range only if it found the existence of an aggravating or mitigating circumstance "of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines."  In making such a finding, a sentencing court could consider only the guidelines themselves and the policy statements and official commentaries of the Sentencing Commission. . . . [D]epartures on this basis were rarely available because "[i]n most cases, as a matter of law, the Commission will have adequately taken all relevant factors into account, and no departure will be legally permissible."

United States v. Irey, 612 F.3d 1160, 1181–82 (11th Cir. 2010) (en banc) (citations

omitted) (quoting Booker, 543 U.S. at 234, 125 S. Ct. at 750).

In the mandatory guidelines era, this Court's allocution error rule was that

"prejudice must be found if a defendant" was not "given the opportunity to speak

to the court when the possibility of a lower sentence existed." Prouty, 303 F.3d at

1252–53.  That meant that where a defendant was denied the right to allocute and

where he "did not receive the lowest sentence available within the applicable

[mandatory] guideline[s] range," we would presume prejudice for the purposes of

the plain error rule's third requirement.  Id.

Presuming prejudice in denial of allocution cases where there was room at

the bottom of the guidelines range was an exception to the strong, general rule that

a party who failed to object must prove that the error prejudiced him.  See, e.g.,

7

Rodriguez, 398 F.3d at 1299.  We gave two reasons for presuming prejudice in those circumstances.  First, we said that proving prejudice from a failure to allocute would be nearly impossible "because the impact of the omission on a [judge's] discretionary [sentencing] decision is usually enormously difficult to ascertain." Prouty, 303 F.3d at 1253 (quotation marks omitted).  Second, we said that the right to allocute had "symbolic meaning that len[t] legitimacy to the sentencing process" and "maximiz[ed] the perceived equity of the process."  Id. at 1253.  We have neither the need nor the inclination to question that reasoning because under the prior panel precedent rule we are bound to follow prior decisions regardless of our view of their correctness.  See United States v. Steele, 147 F.3d 1316, 1317–18 (11th Cir. 1998) (en banc).

The flipside of, or exception to, our pre-Booker rule that prejudice should be presumed for allocution violations where the sentence left some bottom side room in the guidelines range was that prejudice should not be presumed where the sentence rested on the bottom of range.  See, e.g., Quintana, 300 F.3d at 1232 (holding, in a pre-Booker denial of allocution case, that reversal was inappropriate because the defendant was sentenced to the bottom of the range, which was the lowest term of imprisonment permissible under the guidelines).  The premise of that exception was that in the mandatory guidelines era there was virtually no possibility that the defendant could talk the judge into a lower sentence than the

8

one at the bottom of the guidelines range, a range that penned in the judge's discretion. Before <u>Booker</u> the bottom was the true bottom and was as low as the sentence could go, barring some departure, which rarely occurred.

Then came <u>Booker</u>. <u>See</u> 543 U.S. at 245, 125 S. Ct. at 756–57. In it the Supreme Court held that the mandatory guidelines regime was unconstitutional, and instructed lower courts that sentencing guidelines should be treated as "advisory rather than mandatory." <u>Irey</u>, 612 F.3d at 1183 (citing <u>Booker</u>, 543 U.S. at 245, 125 S. Ct. at 756–57). The result is that a sentence outside the guidelines range is not the extraordinary event that it once was. Nowadays, it's not at all unusual for a court to sentence a defendant below the guidelines range. In the 2012 fiscal year, the one in which Doyle was originally sentenced, 39.5 percent of sentences in our circuit for which data is available fell below the guidelines range. U.S. Sentencing Comm'n, <u>2012 Sourcebook of Federal Sentencing Statistics</u>, at 62 (2012). Even when the government did not sponsor or move for a downward departure or variance, 21.2 percent of sentences were below-the-range sentences. <u>Id.</u>[3]

---

[3] The percentage of below the range sentences has increased since Doyle was sentenced six years ago. In the 2016 fiscal year, 44.4 percent of all sentences in this circuit for which data is available fell below the guidelines range, and even when the government did not sponsor or move for a downward departure or variance, 25.4 percent of sentences were below-the-range sentences. U.S. Sentencing Comm'n, <u>Comparison of Sentence Imposed and Position Relative to the Guideline Range by Circuit</u> (2016), http://www.ussc.gov/sites/default/files/pdf/research-and-publications/annual-reports-and-sourcebooks/2016/TableN-11.pdf.

Despite the sea change effected by Booker a dozen years ago, this Court's case law on whether a defendant has to prove prejudice from the denial of allocution has neither ebbed nor flowed.  Our United States v. Perez case involved a post-Booker sentence hearing in which the district court failed to afford the defendant his right of allocution.  661 F.3d at 575, 583.  We reaffirmed the presumption that "the denial of a defendant's right to allocute [is] prejudicial whenever the possibility of a lower sentence exists."  Id. at 586.  And because the district court had sentenced the defendant above the bottom of his advisory guidelines range, we presumed prejudice and held that denying him his right of allocution affected his substantial rights.  Id.  The Perez decision shows that the presumption of prejudice in denial of allocution cases is still the rule when a defendant is not sentenced at the bottom of his guidelines range, and that makes sense because Booker did nothing to affect the rationale of that aspect of our rule.  The Perez decision did not, however, present the issue of whether Booker affected the exception under which prejudice should not be presumed from an allocution error where the defendant was sentenced at the bottom of his guidelines range.  This case does present that issue.

## C.  THE END OF THE EXCEPTION FOR BOTTOM-OF-THE-RANGE SENTENCES

Doyle is entitled to a presumption of prejudice.  As we have discussed, we presume prejudice in the denial of allocution context "when the possibility of a

10

lower sentence exist[s]." Prouty, 303 F.3d at 1252.  Because the sentencing guidelines are now advisory, in most cases a lower sentence will be possible even where the defendant is sentenced at the bottom of his advisory guidelines range. The logic that underpinned Quintana and other of our pre-Booker decisions rejecting a presumption of prejudice in bottom-of-the-range cases was dependent on the premise that the guidelines were mandatory and the bottom of a range was as far low as a sentence could go, absent extraordinary circumstances.  See 300 F.3d at 1232.

Because Booker knocked out that premise, the conclusion that rested upon it can no longer stand.  As a result, a defendant will generally be entitled to a presumption that he was prejudiced by the district court's failure to afford him his right of allocution, which will satisfy the plain error rule's third requirement, even if he received a sentence at the low end of his advisory guidelines range.[4]

That is not to say that we must presume prejudice in one hundred percent of denial of allocation cases.  To take one example, if a defendant is sentenced to the

_____

[4] We emphasize that the presumption of prejudice in the right of allocution context is a narrow exception to the general rule that prejudice is not to be presumed and the burden to prove prejudice is on the party who failed to object.  We do not mean to imply that this Court should presume prejudice any time it would be difficult for the appellant to prove it.  On the contrary, the "burden of showing prejudice" is intentionally "anything but easy" in order "to encourage timely objections and reduce wasteful reversals."  Rodriguez, 398 F.3d at 1299; see also United States v. Roy, No. 12-15093, __ F.3d __, 2017 WL 1488331, at *8 (11th Cir. Apr. 26, 2017) (en banc) (explaining that refusing to presume prejudice from a constitutional error is "the rule, not the exception," and noting that the Supreme Court has recognized seventeen types of constitutional error that do not warrant a presumption of prejudice).

11

statutory mandatory minimum sentence, there should be no presumption of prejudice. But this is not a mandatory minimum sentence case. The district court could have varied downward from the sentence it imposed if convinced by Doyle during allocution to do so. Because, as we have discussed, the other three requirements of the plain error rule have been met here, we will vacate Doyle's sentence and remand for resentencing.

### III. THE REMEDY

This is a Phillips-procedure, belated direct appeal from Doyle's original sentencing. He is entitled to an opportunity to allocute and have the court resentence him after he says what he wishes to say to the judge. Because his ineffective assistance of counsel claim was rejected in all other respects, however, Doyle is not entitled to an entirely new sentencing proceeding. Nor is he entitled to reassert or reargue any of his objections to the PSR or take steps that his former counsel could have, but did not, take before and during his original sentence hearing, such as filing objections to his PSR or filing a new sentencing memorandum. See United States v. Rogers, 848 F.2d 166–67, 169 (11th Cir.1988) (holding that a defendant who was granted resentencing because of denial of right to allocute was not entitled to raise new objections to the PSR); see also United States v. Willis, 649 F.3d 1248, 1255–56 (11th Cir. 2011) (rejecting the argument

12

that a district court must allow a defendant to "relitigate all issues related to [his] sentence" at resentencing).

The effect of our decision today is to return Doyle to the position he was in on the day of his original sentence hearing in 2011, with the same record that was before the sentencing court at that time.  There are to be only two differences this time.  First, he must be allowed to allocute.  Second, under Pepper v. United States, 562 U.S. 476, 131 S. Ct. 1229 (2011), the "district court at resentencing may consider evidence of the defendant's postsentencing rehabilitation and . . . such evidence may, in appropriate cases, support a downward variance from" Doyle's advisory guidelines range.  Id. at 481, 131 S. Ct. at 1236 (emphasis added).  That's a double "may" holding that leaves what consideration, if any, to give to Doyle's post-sentencing rehabilitation, if any, up to the district court.

**VACATED AND REMANDED.**

13