[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-10903
Non-Argument Calendar
_____

D.C. Docket No. 2:17-cr-14014-DMM-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

RICHARD EUGENE FYE, III,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(December 10, 2019)

Before WILSON, MARTIN, and BRANCH, Circuit Judges.

PER CURIAM:

Richard Fye pled guilty to one count of coercion of a minor into sexual activity, one count of production of visual depictions of sexual exploitation of minors, one count of knowingly receiving visual depictions of minors engaged in sexually explicit conduct, and one count of possession of material containing visual depictions of sexual exploitation of minors.  Fye was sentenced to 300-months imprisonment and a lifetime of supervised release.  Although Fye wanted to appeal from his judgment of conviction and sentence, his trial counsel failed to file a timely notice of appeal.  Fye moved to vacate his sentence pursuant to 28 U.S.C. § 2255.  The district court granted Fye's motion and, in accordance with United States v. Phillips, 225 F.3d 1198 (11th Cir. 2000), vacated and reimposed its judgment, thus permitting Fye to file a direct appeal.

Fye raises two issues on direct appeal.  First, he argues his 300-month sentence was substantively unreasonable.  Second, he argues the district court should have conducted a de novo resentencing following the grant of his § 2255 motion, rather than simply reimposing its previous sentence.  Finding no error, we affirm the district court.

**I.**

A.

On December 14, 2016, a fifteen-year-old girl ("EB") and her parents filed a complaint with the Sheriff's Office in Washtenaw County, Michigan (the

2

"Sheriff's Office").  EB reported that, the previous day, she met a fourteen-year-old boy named Marco through the social media application MeetMe.  Marco and EB began conversing on MeetMe and then switched over to Snapchat, another social media application.  Marco asked EB to send him nude photographs of herself, which she did.  After a few moments, Marco sent EB a screenshot of her Facebook contacts and advised her that if she did not send him nude videos of herself he would distribute the photographs to her friends and family members.  She complied with his demand and sent him two fifteen-minute videos of herself engaged in sexually explicit activity.

The Sheriff's Office requested the help of the Detroit bureau of Homeland Security Investigations, an arm of the United States Department of Homeland Security, which traced Marco's IP address to an address in Port St. Lucie, Florida.  After connecting the IP address with a cellular telephone number, law enforcement identified "Marco" as the defendant in this action, a twenty-four-year-old man residing at a sober living home for people recovering from substance abuse addiction.  Homeland Security also found that EB was not the only underage female whom Fye had corresponded with in the guise of "Marco."  A search warrant executed against one of the social media accounts registered at Fye's address showed that he carried on similar interactions—pretending to be Marco; asking for nude photographs; and demanding nude videos—with several other

3

underage individuals.  Later searches would turn up more such evidence.

Homeland Security executed a search warrant at Fye's residence and found an

iPhone and a laptop computer with over 200 suspected child pornography videos

and images.

## B.

Fye was taken into federal custody on February 8, 2017 and detained

without bail pending trial.  The following day, he was indicted by a grand jury in

the U.S. District Court for the Southern District of Florida on four counts:

(1) knowingly inducing, enticing, or coercing a minor to engage in sexual activity,

in violation of 18 U.S.C. § 2422(b); (2) production of material containing visual

depictions of sexual exploitation of minors, in violation of 18 U.S.C. § 2251(a) and

(e); (3) knowing receipt of a visual depiction of a minor engaged in sexually

explicit content, in violation of 18 U.S.C. § 2252(a)(2) and (b)(2); and (4) knowing

possession of material containing visual depictions of minors engaging in sexually

explicit content, in violation of 18 U.S.C. § 2252(a)(4)(B) and (b)(2).

Fye pled guilty to the four-count indictment pursuant to a written plea

agreement and factual proffer.  The U.S. Probation Department prepared a

presentence investigation report ("PSR") setting forth the facts that formed the

basis for Fye's indictment, as well as information about sixteen additional

underage video production victims.  The government supplemented the PSR with

4

information about additional victims of Fye's conduct.  Based on the offense level of 43 calculated in the PSR, Fye's guideline imprisonment range was life.  The PSR also set forth facts about Fye's life that the district court could consider at sentencing, including his history of substance abuse, up-and-down employment record, and history of anxiety and depression.  Prior to sentencing, Fye asked for a downward variance from the guideline range of life imprisonment to the mandatory minimum sentence of 15 years.  The government opposed Fye's request and recommended a sentence of 60-years imprisonment.

At the sentencing hearing on June 8, 2017 the district court heard from a number of Fye's victims.  Some of the victim impact statements were in the form of letters read in open court, while others came into evidence by live testimony from victims' family members.  Fye called several of his own family members as character witnesses who testified that his crimes were uncharacteristic and resulted from his substance abuse.  Some of these family members also submitted letters on Fye's behalf prior to sentencing.  Fye also called Dr. Ben Taylor, a mental health counselor specializing in sex offenders, who testified that Fye had a low risk of recidivism and that Fye suffered from depression, post-traumatic stress disorder, and obsessive compulsive disorder.  Dr. Taylor admitted on cross-examination that his assessment of the likelihood of Fye's recidivism was based on general statistics, not factors individual to Fye, and that he would diagnose Fye as either a

5

pedophile or hebephiliac.  The government then called Dr. Michael Brannon, a forensic psychologist, as a rebuttal witness.  Dr. Brannon did not interview Fye but he did review Dr. Taylor's reports.  Dr. Brannon testified that he would have given Fye a moderate-to-high probability of recidivism and that Dr. Taylor's evaluation of Fye did not accord with accepted evaluation methods.

In determining Fye's sentence, the district court first stated that, while Fye's crime was "extremely serious," it did not warrant life in prison.  The district court then noted its consideration of a 2012 report by the United States Sentencing Commission discussing how federal child pornography offenders are prosecuted, sentenced, incarcerated, and supervised following reentry to the community.[1]  The district court "tried to use the 2012 report as a guide because" he did not think the guidelines were, "in many cases, . . . discerning enough and don't recognize the differences between different types of cases."  The court recognized that Fye's case "is worse than the average offender in some ways" because "[h]e targeted multiple victims, including one very young child"; but the court also stated that Fye's conduct was "in other ways . . . less culpable than the typical offender" because he had no physical contact with his victims and he did not attempt to seek them out after they cut off contact.  The court stated that Fye did not distribute the videos he

---

[1] See U.S. Sentencing Comm'n, Federal Child Pornography Offenses (2012), https://www.ussc.gov/research/congressional-reports/2012-report-congress-federal-child-pornography-offenses.

received (with one limited exception) and had no profit motive.  The court took note of Fye's lack of a criminal history and the lack of "signs that he was going to act physically on these impulses."

The district court sentenced Fye to 300-months imprisonment on Count 1 and 240-months imprisonment on Counts 2, 3, and 4, all to be served concurrently. The court also sentenced Fye to supervised release for a term of life, as well as additional special conditions.  Fye did not file a notice of appeal following entry of his judgment of conviction and sentence.

## C.

On June 20, 2018, Fye filed a motion to vacate his sentence pursuant to 28 U.S.C. § 2255 claiming ineffective assistance of trial counsel.  Fye alleged that counsel was ineffective for failing to file a notice of appeal even though Fye directed him to do so, and for failing to move to dismiss Count 1 in the indictment for insufficiency of evidence.  Fye produced emails showing that he asked his trial counsel to file a notice of appeal but counsel failed to do so.  Upon order of the district court, Fye filed an amended motion with a memorandum of law a month later.  The government responded to the § 2255 motion agreeing that counsel was ineffective for failing to file a notice of appeal but disagreeing that the failure to move to dismiss Count 1 was constitutionally deficient.

7

The Magistrate Judge agreed with the government and issued a report and recommendation ("R&R") recommending the district court grant the § 2255 motion as to the notice-of-appeal ground only.  The Magistrate Judge found that counsel's refusal to file a notice of appeal and refusal to provide Fye or his family members with the names of potential appellate lawyers was a per se violation of Fye's rights under the Sixth Amendment.  The Magistrate Judge also agreed with the government that, when counsel's deficient performance deprives a defendant of his right to an appeal, the proper remedy is to (1) vacate the criminal judgment, (2) reimpose the same sentence, (3) advise the defendant of all of his rights associated with a criminal appeal, and (4) advise the defendant that he has fourteen days from the reimposed sentence to file a notice of appeal.  See Phillips, 225 F.3d at 1201.  The district court adopted the R&R and vacated and reimposed Fye's sentence by separate order.  The district court dismissed the motion-to-dismiss ground of Fye's § 2255 motion and stated he would be permitted to refile such a motion once his conviction and sentence become final.

Fye moved for appointment of appellate counsel, which the district court granted.  Now represented by counsel, Fye timely filed his notice of appeal.

## II.

"District courts must determine in each case what constitutes a sentence that is 'sufficient, but not greater than necessary,' 18 U.S.C. § 3553(a), to achieve the

8

overarching sentencing purposes of retribution, deterrence, incapacitation, and rehabilitation." Rosales-Mireles v. United States, 585 U.S. ___, 138 S. Ct. 1897, 1903 (2018) (quotation marks omitted). "We review the reasonableness of a sentence under the deferential abuse-of-discretion standard." United States v. Delva, 922 F.3d 1228, 1256 (11th Cir. 2019). "A district court abuses its discretion when it (1) fails to afford consideration to relevant factors that were due significant weight, (2) gives significant weight to an improper or irrelevant factor, or (3) commits a clear error of judgment in considering the proper factors." United States v. Irey, 612 F.3d 1160, 1189 (11th Cir. 2010) (en banc) (quotation marks omitted). "The party challenging the sentence bears the burden to show that the sentence imposed is unreasonable in light of the record and the 18 U.S.C. § 3553(a) factors." Delva, 922 F.3d at 1256 (quotation marks omitted).

2.

Fye argues that, while the district court discussed some of the § 3553(a) factors at sentencing, it failed to give adequate weight to several of the factors. In particular, Fye claims the district court failed to consider his argument that his personal history and characteristics motivated a downward variance.

At sentencing, the district court stated that Fye's conduct "may have been partially the result of [his] addiction in a particularly vulnerable time in his life when he was unemployed, separated from his family, and receiving treatment for

9

his addiction." The district court concluded that these factors decreased Fye's likelihood of recidivism, even as the court also stated Fye's history of addiction could increase the likelihood of recidivism. While Fye may have preferred the district court to consider and weigh these factors in such a way that resulted in a lower sentence, the court was under no obligation to do so. It also bears noting that the 300 months imposed by the court was already a stark downward departure from both the government's recommendation and the sentencing guidelines. This is further evidence that the district court considered Fye's personal history at sentencing.

The district court's explanation of the sentence comports with 18 U.S.C. § 3553(a) and is not unreasonable in light of the record, so Fye cannot show the court abused its discretion in sentencing him.

Fye also argues that the district court should have held a de novo resentencing after his trial counsel was found to be ineffective. However, Fye's counsel was not held ineffective for any of his conduct at sentencing. Rather, the district court's sole ground for granting the § 2255 motion was that Fye's counsel was "ineffective for failing to prosecute a requested direct appeal." In such a circumstance, Phillips commands vacatur and reimposition of the original sentence without requiring the reopening of sentence proceedings. See United States v.

10

Doyle, 857 F.3d 1115, 1121 (11th Cir. 2017).  The district court properly followed this procedure.

## III.

Fye's judgment of conviction and sentence are **AFFIRMED.**