[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-14188
Non-Argument Calendar

_____

D.C. Docket Nos. 1:03-cr-00636-RWS-JFK-3,
1:16-cv-02033-RWS

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

ERNEST ROMOND GIBBS, JR.,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(August 27, 2021)

Before NEWSOM, LAGOA, and BLACK, Circuit Judges.

PER CURIAM:

Ernest Gibbs, Jr., a federal prisoner, was granted relief under 28 U.S.C. § 2255 from one of his three counts of conviction in light of *Davis v. United States*, 139 S. Ct. 2319 (2019). He now appeals from the district court's amended judgment sentencing him to consecutive 240-month sentences, the statutory maximum, as to each of his remaining counts of conviction. He asserts the district court abused its discretion by resentencing him without conducting a formal resentencing hearing, ordering an updated presentence investigation report (PSI), or accepting sentencing memoranda, in violation of the standard set forth in *Brown v. United States*, 879 F.3d 1231 (11th Cir. 2018). He also contends his new sentence is procedurally unreasonable because the district court failed to consider the 18 U.S.C. § 3553(a) factors and evidence of his post-sentencing rehabilitation, in violation of *Pepper v. United States*, 562 U.S. 476 (2011). After review,[1] we affirm the district court.

## I. BACKGROUND

*A. Gibbs's convictions and sentencing*

In 2005, a jury found Gibbs guilty of conspiracy to commit robbery, in violation of 18 U.S.C. § 1951(a) (Count 1); interference with interstate commerce

---

[1] In an appeal from a proceeding on a motion to vacate, set aside, or correct sentence, we review legal issues *de novo*. *Brown*, 879 F.3d at 1234. We review a district court's choice of a 28 U.S.C. § 2255 remedy for an abuse of discretion. *Id.* at 1235. We review a sentence's reasonableness for abuse of discretion. *Gall v. United States*, 552 U.S. 38, 51 (2007).

by violence, in violation of 18 U.S.C. § 1951(a) (Count 2); and causing the death of another by use of a firearm during the commission of a crime of violence, in violation of 18 U.S.C. §§ 924(c)(1)(A), (c)(1)(A)(iii), (j)(1) and 2 (Count 3). Count 3 was predicated on Count 1 only.

Gibbs's PSI stated that, in October 2003, Gibbs and codefendant Michael Leggett accosted Moustfa Koura and Izzay Denney, Jr. at a bank in Atlanta, Georgia. Without making any demands or saying anything to the victims, Gibbs and Leggett discharged their firearms, killing Koura instantly and wounding Denney, who returned fire and struck Leggett twice. Gibbs took several empty canvas money bags that Denney had been carrying. Gibbs, Leggett, and codefendant Travis Carter fled the bank and obtained no money during the robbery.

The PSI, using the 2004 Guidelines manual, calculated Gibbs's base offense level at 43 as to both Counts 1 and 2 because, although the base offense level for Counts 1 and 2 ordinarily would be 20, pursuant to U.S.S.G. § 2B3.1(a), the cross-reference at § 2B3.1(c) stated the provision for first-degree murder in § 2A1.1 should be applied if a victim was killed under circumstances constituting murder under 18 U.S.C. § 1111. Thus, because Koura was killed during the offense, the PSI applied a base offense level of 43, and it applied no enhancements or reductions. As for Count 3, the PSI stated that, pursuant to § 2K2.4(a), the

3

guideline sentence was the minimum term of imprisonment as required by statute. The statutory minimum for causing a person's death in the course of a § 924(c) violation was "death or [] imprisonment for any term of years or for life," pursuant to § 924(j)(1). It stated the adjusted offense level for Count 3 was 43, pursuant to U.S.S.G. § 2A1.1. With an additional 3-level increase for the 3 counts, Gibbs's combined total offense level was 46. With a criminal history category of II, and an offense level of 46, Gibbs's guideline range was life imprisonment with a statutory maximum of 240 months' imprisonment on both Counts 1 and 2.

At sentencing Gibbs introduced about 300 pages of special education records from the school board and additional high school records. Gibbs's sister testified that she and Gibbs grew up in an abusive home. Dr. Jethro Toomer testified to Gibbs's intellectual disabilities, including that Gibbs met the diagnostic criteria for "mild mental retardation." Keith Johnson, Gibbs's eighth grade football coach, testified as to how Gibbs had helped another student overcome depression, anxiety, and agoraphobia, and the student's mother confirmed that Gibbs had changed the student's life dramatically.

In announcing his sentence, the district court stated that Gibbs's offense level was "at least a 43, category [II]" and that, "[e]ven if they are category [I], both of those call for a mandatory life sentence. I see no ground for a downward departure under the Guidelines, and would decline to depart." In considering the

4

§ 3553(a) factors as they applied to both Gibbs and Leggett, the district court emphasized the case involved a premeditated incident that resulted in felony murder and that, in cases such as these, the sentence should be life imprisonment 99 percent of the time.  As to Gibbs's personal characteristics and history, it noted Gibbs "clearly does seem to be a slow learner" and that "there is more to life than one act of kindness in middle school and sadly, Mr. Gibbs has chosen to go a different way since that rather heartwarming story."  Regarding deterrence and protecting the public, it noted there was nothing before it to reassure it that Gibbs would not commit an act of violence again and that, although he had not said that he was sorry, it assumed that was because he was not a verbal person.  Noting that it believed there was still a chance of redemption and meaning, the court sentenced Gibbs to 240 months as to Count 1, a consecutive 240 months as to Count 2, and a consecutive life sentence as to Count 3.  It did not impose a term of supervised release, noting that doing so "would seem silly."

Gibbs appealed, and this Court affirmed his conviction and sentences. *United States v. Gibbs*, 237 F. App'x 550 (11th Cir. 2007).

B.  *Gibbs's post-conviction motions*

In 2016, Gibbs filed a *pro se* 28 U.S.C. § 2255 motion to vacate his conviction and sentence for Count 3 based on *Johnson v. United States*, 576 U.S. 591 (2015) and requested appointment of counsel.  The district court denied

5

Gibbs's motions because his arguments were foreclosed by binding precedent, he did not have a "separate [18 U.S.C.] § 924(c) conviction," and his § 924(j) conviction was not based on attempt to commit Hobbs Act robbery.

In 2019, Gibbs filed a *pro se* "Motion to Amend Judgment" pursuant to Federal Rule of Civil Procedure 59(e), alternatively requesting his request be held in abeyance pending the outcome in *Davis*, 139 S. Ct. 2319, and he again requested appointment of counsel. The district court granted Gibbs's motion for appointment of counsel.

Gibbs, now represented by counsel, filed an amended 28 U.S.C. § 2255 motion to vacate based on *Davis*, asserting the predicate offense of conspiracy to commit Hobbs Act robbery only qualified under 18 U.S.C. § 924(c)'s unconstitutional residual clause. As for his remedy, he asserted the district court must vacate the § 924(c), (j) conviction, unbundle the sentencing package, and revisit the sentence imposed on Counts 1 and 2. He requested the court hold a resentencing hearing, order an updated PSI on the remaining counts, and allow the parties to argue for a revised sentence.

The Government responded and conceded that Gibbs's § 924(c) conviction must be vacated because it was predicated on the conspiracy charge in Count 1 rather than the charge in Count 2. However, the Government opposed Gibbs's request for resentencing because his case did not involve crafting an entirely new

sentence based on one erroneous count of conviction. The Government asserted it was clear from the record that the sentencing court had imposed separate, independent periods of confinement for each of Gibbs's crimes, and therefore, a sentencing reduction on Counts 1 and 2 would be inappropriate.

The district court vacated Gibbs's Count 3 conviction. However, it determined resentencing on Counts 1 and 2 was not necessary. In a written order, the district court detailed its reasoning for that decision. The court stated it had reviewed the record, including the sentencing transcript and PSI,[2] and found that a sentence of 240 months' imprisonment on each count, served consecutively, was appropriate and that anything less would undermine § 3553(a)(2)'s objectives. Specifically, it found the 480-month sentence was appropriate based on the nature and circumstances of the convictions, as Gibbs and codefendant Leggett had shot and killed a guard during the robbery, as well as Gibbs's history and characteristics, including his mental health evaluation, prior criminal conduct, his difficult childhood, and acts of kindness. Regarding the need to avoid sentencing disparities, it noted that Leggett, who was also a shooter in the attempted robbery, had received a total 480-month sentence. Unlike Gibbs, Leggett pled guilty and did not go to trial. Leggett's sentence was later reduced to 360 months'

---

[2] The district judge presiding over the § 2255 motion was not the same district judge who imposed Gibbs's original sentence.

imprisonment after a Rule 35 motion.  After its review of the record and consideration of the § 3553(a) factors, the district court concluded that Gibbs's original 480-month total sentence on Counts 1 and 2 was appropriate.  However, it added a new condition of five years of supervised release as to each count, to be served concurrently.

## II.  DISCUSSION

### A.  Resentencing Hearing

If, pursuant to § 2255(b), a court concludes a motion to vacate, set aside, or correct a sentence should be granted, it must follow a two-step process.  *Brown*, 879 F.3d at 1235.  First, it must vacate and set aside the judgment.  *Id.*  Second, it must choose from among four remedies: (1) discharging the prisoner; (2) resentencing the prisoner; (3) granting a new trial; or (4) correcting the prisoner's sentence.  *Id.*  A resentencing is a distinct remedy from a correction.  *Id.* at 1236.  A correction is a "more limited remedy, responding to a specific error," and does not require a sentencing hearing.  *Id.* at 1236 & n.3.  A resentencing, however, is "more open-ended and discretionary, something closer to beginning the sentencing process anew" and requires a resentencing hearing with the defendant present.  *Id.*

To determine whether a resentencing hearing is necessary, the key question is whether the sentence modification is a critical stage of the proceedings, such that

due process protects the defendant's right to be present. *Id.* at 1236. Two fact-intensive inquiries are required. *Id.* at 1238-40. First, a court must determine whether the errors requiring the grant of relief undermine the sentence as a whole. *Id.* at 1239. As to the first factor, we have noted that, "[i]f there is a chance that an erroneous sentence on one count of conviction influenced the sentencing judge's decisions on other counts, then merely excising the mistaken sentence for one count won't put the defendant in the same position as if no error had been made," and a resentencing hearing, with the defendant present, may be required. *Id.*

Second, the court must determine whether it will "exercise significant discretion in modifying the defendant's sentence," including whether it will consider questions that it was not called upon to consider at the original sentencing hearing. *Id.* at 1239-40. For example, a new hearing may be necessary if "a court must exercise its discretion in modifying a sentence in ways it was not called upon to do at the initial sentencing," which may occur if the original sentencing court did not reach certain issues because it imposed a sentence that no longer applies. *Id.* at 1239. When both factors are present, a sentence modification is a critical stage of the proceedings, and the defendant's presence is required. *Id.* at 1240.

In *Brown*, we considered whether a court was required to resentence, rather than correct a sentence, where there was only one count of conviction and the defendant's original sentence was set by the mandatory minimum under the Armed

Career Criminal Act (ACCA). *Id.* We held the district court's failure to grant a resentencing hearing when imposing a new sentence without the ACCA enhancement under a new guideline range was an abuse of discretion because (1) the ACCA enhancement undermined the defendant's sentence as a whole because it was his "one and only count of conviction"; (2) the court failed to exercise the necessary discretion in determining the new sentence considering that the original sentence had been based solely on the mandatory minimum under the ACCA and the court had not previously considered the information in the PSI and the 18 U.S.C. § 3553(a) factors; and (3) the district court provided no explanation for the sentence, which amounted to an upward variance from the new guideline range that was "a clear act of open-ended discretion." *Id.* at 1240-41.

Conversely in *Thomason*, we held the district court did not abuse its discretion in denying a resentencing hearing after granting the defendant's motion to vacate based on an error under *Johnson* that affected four of his eight counts of conviction and did not result in a change to his guideline range. *United States v. Thomason*, 940 F.3d 1166, 1168-69 (11th Cir. 2019). Citing to *Brown*, we stated "[a] district court need not conduct a full resentencing when correcting the error does not change the guideline range and the district court does not make the sentence more onerous." *Id.* at 1172. We held the *Johnson* error did not undermine the defendant's sentence as a whole or change his guideline range, and

the district court imposed a less onerous sentence. *Id.* at 1173-74. We also concluded the district court had not exercised significant discretion where the district court considered evidence of the defendant's post-sentencing rehabilitative conduct because the court had given the parties notice and an opportunity to make written submissions regarding that evidence. *Id.* at 1174.

The district court did not err when it declined to hold a formal resentencing hearing. As to the first question in *Brown*, the *Davis* error did not undermine Gibbs's Count 1 and Count 2 sentences, as the original sentencing court's decision to sentence him to consecutive 20-year sentences on those counts was distinct from the life sentence that he received on his now-vacated count. Even if Gibbs had never been convicted on the now-vacated count, his Guidelines calculation would not have resulted in a different imprisonment range, given that the cross-reference at U.S.S.G. § 2B3.1(c)(1) still would have applied to yield the same Guidelines sentence of life imprisonment, notwithstanding the 20-year statutory maximum on his 2 remaining counts of conviction. 18 U.S.C. § 1951(a) (providing the statutory maximum sentence for a violation of the statute is 20 years' imprisonment); U.S.S.G. §§ 2A1.1, 2B3.1(c)(1) (2004, 2018) (providing if a victim was killed during the commission of an 18 U.S.C. § 1951 violation and would constitute murder under 18 U.S.C. § 1111, a cross-reference to first-degree murder is applied, making the base offense level 43, yielding a Guidelines sentence of life

11

imprisonment); U.S.S.G. § 5G1.2(d) (providing where a defendant is convicted of multiple offenses, if the sentence imposed on the count with the highest statutory maximum is less than the total punishment, the sentence on the other counts must run consecutively to the extent necessary to produce a sentence that is equal to the total punishment); *see also United States v. Magluta*, 418 F.3d 1166, 1185 (11th Cir. 2005) (stating the proper application of § 5G1.2(d) requires that sentences run consecutively to the extent necessary to reach the punishment range set by the Guidelines, even though they are advisory).

As to the second question in *Brown*, the district court was not called to exercise its discretion in a way not required at the initial sentencing. Like in *Thomason*, the error did not change the guideline range and the district court did not make the sentence more onerous. *See Thomason*, 940 F.3d at 1172. The district court reimposed the same term of imprisonment on the two remaining counts and added a five-year term of supervised release. We conclude the addition of a five-year term of supervised release to the original sentence is not such an act of significant discretion to necessitate a resentencing hearing under the facts of this case, when the original life sentence made a term of supervised release irrelevant. Accordingly, we affirm as to this issue.

B. *Post-sentencing rehabilitation*

12

We determine whether the district court committed any significant procedural error by, among other things, "failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range." *Gall v. United States*, 552 U.S. 38, 51 (2007). A district court is not required to state on the record that it has explicitly considered or discussed each § 3553(a) factor. *United States v. Docampo*, 573 F.3d 1091, 1100 (11th Cir. 2009). The district court's acknowledgment that it considered the § 3553(a) factors and the defendant's arguments is sufficient. *Id.*

Section 3553(a) provides that the district court must impose a sentence that is "sufficient, but not greater than necessary" to: (1) reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense; (2) afford adequate deterrence to criminal conduct; (3) protect the public from further crimes of the defendant; and (4) provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. 18 U.S.C. § 3553(a)(2)(A)–(D). In addition, the court must consider: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the kinds of sentences available; (3) the guideline sentencing range; (4) any pertinent policy statements; (5) the need to avoid unwarranted sentencing disparities; and (6) the need to provide restitution to

13

any victims.  *Id.* § 3553(a)(1), (3)–(7).  Although the district court is required to consider all of the § 3553(a) factors, it "is permitted to attach great weight to one factor over others."  *United States v. Shaw*, 560 F.3d 1230, 1237 (11th Cir. 2009) (quotation marks omitted).

Prior to *Pepper v. United States*, 562 U.S. 476 (2011), the Guidelines included a policy statement stating that post-sentencing rehabilitative efforts were not an appropriate basis for a downward departure when resentencing a defendant because, in relevant part, doing so would inequitably benefit only those who obtained the opportunity to be resentenced *de novo, see* U.S.S.G. § 5K2.19 (2004).  In *Pepper*, however, the Supreme Court held a district court may consider post-sentencing rehabilitation after an appellate court has vacated and remanded the defendant's initial sentence, noting evidence of post-sentencing rehabilitation "may be highly relevant to several of the sentencing factors that Congress has specifically instructed district courts to consider."  *Pepper*, 562 U.S. at 499-500.  Consequently, the Guidelines removed the policy statement in § 5K2.19.  *See* U.S.S.G. § 5K2.19, Amend. 768 (effective Nov. 1, 2012).  We have since recognized the Supreme Court left what consideration, if any, to give a defendant's post-sentencing rehabilitation to the district court's discretion.  *United States v. Doyle*, 857 F.3d 1115, 1121 (11th Cir. 2017).

Gibbs's sentence is procedurally reasonable.  The district court's decision to not accept evidence of his post-sentencing rehabilitation was within its discretion, as it was not required under *Pepper* or our precedent to consider such evidence. *Pepper*, 562 U.S. at 499-500; *Doyle*, 857 F.3d at 1121.  Furthermore, the district court adequately explained its sentencing decision by weighing several of the § 3553(a) factors and considering relevant facts.  *See Docampo*, 573 F.3d at 1100. Despite not holding a resentencing hearing, the district court's order was thorough in reviewing the record, and the district court considered several of the § 3553(a) factors.  It considered the nature and circumstances of the convictions, specifically that Gibbs and Leggett had shot and killed a guard during the robbery, as well as Gibbs's history and characteristics.  The district court also considered the need to avoid sentencing disparities with codefendant Leggett.  Additionally, the district court was entitled to give more weight to the nature of the offense than Gibbs's most current personal characteristics or potential evidence regarding his post-sentencing rehabilitation.  *See Shaw*, 560 F.3d at 1237.

Accordingly, we affirm.

**AFFIRMED.**

15