[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-10533
Non-Argument Calendar

_____

D.C. Docket No. 1:19-cr-20200-MGC-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ELDRICK WENDELL WOODING, SR.,
a.k.a. Wendell W. Wooding, Sr.,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(September 14, 2021)

Before WILSON, ROSENBAUM, and GRANT, Circuit Judges.

PER CURIAM:

Eldrick Wooding appeals his conviction and sentence for conspiracy to defraud the United States, in violation of 18 U.S.C. § 371. He argues that his conviction is invalid because the government failed to prove that the conspiracy continued into the statute of limitations period, and because the court erred in instructing the jury. He also argues that his sentence should be vacated because the court plainly erred by denying him his right to speak on his own behalf at sentencing and clearly erred by denying him a mitigating role reduction when calculating his Sentencing Guidelines offense level. We affirm Wooding's conviction but vacate his sentence and remand for further proceedings.

I.

Evidence introduced at Wooding's trial showed that Freddie Howard filed two fraudulent tax returns on Wooding's behalf, one for tax year 2010 and one for tax year 2011. The returns contained false statements of gambling winnings, withholdings, and losses, resulting in tax refunds to Wooding of more than $35,000 for 2010 and more than $50,000 for 2011.

Howard testified that before filing the 2010 return, he met with Wooding in a parking lot to discuss how he could help with Wooding's financial situation. Wooding gave Howard his name, Social Security number, date of birth, and address, though according to Howard, Wooding did not yet know that Howard was in the business of tax fraud, and Howard did not tell him what he was going to do

with his personal information.  During the meeting, Howard told Wooding that "if anything was to go wrong, he never knew" Howard.  Wooding replied, "You can trust me, I got your back."

Howard prepared Wooding's 2010 tax return, signed Wooding's name on the return, and attached a false gambling receipt in Wooding's name.  The IRS sent Wooding a refund check for $36,908.14, made payable to Wooding and marked "United States Treasury" and "tax refund."  After Wooding received the check, he met Howard at a bank and Howard deposited the check into his own bank account because Wooding did not have one.  Howard wrote personal checks to Wooding totaling about $21,000 and kept the remainder of the refund.

After Wooding spent his share of the 2010 tax refund, he contacted Howard and asked if Howard could do "another one of those" for him.  Howard believed that Wooding knew, at that point, that he was asking Howard to file a fraudulent tax return because Wooding had received the U.S. Treasury check marked "tax refund" from his 2010 return, and he had been to Howard's office and was aware that he prepared tax returns.

Howard prepared and filed Wooding's 2011 tax return in the same way as before, falsely claiming gambling income, withholdings, and losses on Wooding's behalf.  Howard applied for a tax refund of more than $50,000, and Wooding agreed to give Howard $15,000 as his share.

In January 2013, Wooding contacted the IRS directly to ask about his refund for the 2011 tax year, and he submitted an affidavit containing additional false statements to the IRS to expedite the processing of his tax refund.  In April 2013, the IRS issued a refund check to Wooding in the amount of $56,833.94 for the 2011 tax year.  This time, Wooding deposited the refund in his own bank account and kept it all, despite his agreement to give Howard a share.

Almost six years later, Wooding was indicted for conspiring to defraud the United States, in violation of 18 U.S.C. § 371.  Howard testified against him at his trial, and the jury found him guilty as charged.  The district court sentenced Wooding to 46 months' imprisonment, followed by three years of supervised release. Wooding now appeals.

## II.

Wooding challenges his conviction on statute of limitations grounds and based on his argument that the district court erred in giving a "deliberate ignorance" jury instruction that encompassed the question of whether he acted willfully.  He also challenges his sentence, arguing that the court clearly erred in failing to reduce his Sentencing Guidelines offense level based on his mitigating role in the conspiracy and plainly erred by denying him the opportunity to address the court before sentencing.  We address each argument in turn.

4

A.

For the first time on appeal, Wooding argues that the statute of limitations for the conspiracy charge expired before he was indicted in April 2019. He argues that the general five-year statute of limitations for noncapital offenses applies here, and that even if the more specific six-year statute of limitations for conspiracy to defraud the United States by impeding the IRS applies—as we held in *United States v. Waldman*, 941 F.2d 1544, 1549 (11th Cir. 1991)—he withdrew from the conspiracy when he began communicating with the IRS on his own in January 2013, more than six years before the indictment was returned.

Regardless of which limitations period applies, however, Wooding waived this issue by failing to raise it in the district court. In criminal cases, the statute of limitations is a nonjurisdictional affirmative defense that can be waived if not asserted by the defendant at trial. *United States v. Najjar*, 283 F.3d 1306, 1308–09 (11th Cir. 2002). Consequently, a limitations defense that was not raised at or before trial is essentially unreviewable on appeal, even for plain error. *Musacchio v. United States*, 577 U.S. 237, 248 (2016) (discussing the general five-year limitations period for noncapital offenses). This is because the government's burden of proving that it filed a timely indictment does not arise until the defendant raises the issue. *Id.* "When a defendant does not press the defense, then, there is

5

no error for an appellate court to correct—and certainly no plain error." *Id.* We therefore reject Wooding's statute-of-limitations challenge to his conviction.

### B.

Wooding also argues that the district court erred by "expanding" its jury instruction on the issue of deliberate ignorance beyond this Court's pattern instruction "to reach the question of wilfulness [sic]." Ordinarily, we review the legal correctness of a jury instruction de novo. *United States v. Mintmire*, 507 F.3d 1273, 1292–93 (11th Cir. 2007). Here, however, Wooding invited any error in the instruction on deliberate ignorance by proposing the instruction himself. The government initially proposed to give this Court's pattern instruction, and Wooding objected and proposed an alternate instruction, which the court gave. Under the invited error doctrine, we generally will not review an error "induced or invited by a party through the submission of an incorrect jury instruction to the judge which passed on to the jury." *United States v. James*, 642 F.3d 1333, 1337 (11th Cir. 2011) (citation omitted). We apply that doctrine here and decline to review Wooding's claim that the deliberate ignorance instruction erroneously reached the question of his willfulness in joining the conspiracy because he himself proposed the language to which he now objects.

C.

Wooding also challenges his sentence, arguing in part that the district court erred by denying him the opportunity to speak on his own behalf before it imposed his sentence. Wooding failed to object on this ground at sentencing, so our review is for plain error only. *United States v. Doyle*, 857 F.3d 1115, 1118 (11th Cir. 2017). We will reverse a district court's decision under the plain error rule only if "there is: (1) error, (2) that is plain, and (3) that affects substantial rights, and if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* (citation and quotation marks omitted).

Federal Rule of Criminal Procedure 32 requires a sentencing court to "address the defendant personally" before it imposes sentence "in order to permit the defendant to speak or present any information to mitigate the sentence." Fed. R. Crim. P. 32(i)(4)(A)(ii). At Wooding's sentencing hearing, the district court asked Wooding's counsel—not Wooding—"does your client wish to address the court at this time?" Wooding himself responded, "I will, your Honor," but his counsel interrupted, saying, "I recommend against it, your Honor. He would like to, I think, thank the court for its patience throughout the pretrial period of this proceeding and up until today, and ask the court be merciful in its sentence. I think that's what we need to do." The court did not address Wooding directly, and Wooding was not given another opportunity to speak to the court.

7

A court's failure to personally address the defendant about whether he wishes to make a statement at sentencing is plain error. *United States v. George*, 872 F.3d 1197, 1207 (11th Cir. 2017). We generally presume that this error affects the defendant's substantial rights, as long as the defendant could have received a lower sentence. *Id.* And in most cases, a lower sentence will be possible unless the defendant receives the statutory minimum sentence. *See id.* This is because a defendant's allocution could convince the court to vary downward, even if his sentence is at the bottom of the Guidelines range. *Doyle*, 857 F.3d at 1120–21.

We presume that the district court's error in failing to personally address Wooding and allow him to allocute before sentencing affected Wooding's substantial rights because Wooding was sentenced to 46 months' imprisonment and no statutory minimum sentence applied. *See* 18 U.S.C. § 371. The failure to allow a defendant the opportunity to allocute is an error that affects the fairness, integrity, and public reputation of judicial proceedings. *United States v. Perez*, 661 F.3d 568, 586 (11th Cir. 2011). We therefore vacate Wooding's sentence and remand for resentencing, with instructions for the district court to allow Wooding to address the court, if he wishes to do so, before resentencing. *See George*, 872 F.3d at 1209.

8

D.

Wooding also argues that the district court erred in calculating his Sentencing Guidelines offense level when it denied his request for a mitigating role reduction. We review the district court's denial of a mitigating role reduction for clear error. *United States v. Cruickshank*, 837 F.3d 1182, 1192 (11th Cir. 2016). Under this deferential standard of review, we generally will not disturb the district court's "choice between two permissible views of the evidence" regarding the defendant's role as "long as the basis of the trial court's decision is supported by the record and does not involve a misapplication of a rule of law." *Id.* (quoting *United States v. Rodriguez De Varon*, 175 F.3d 930, 945 (11th Cir. 1999) (en banc)).

Section 3B1.2 of the U.S. Sentencing Guidelines provides that a defendant who played a lesser role in the relevant criminal activity may qualify for a two- to four-level reduction in his offense level. U.S.S.G. § 3B1.2. We have explained that the district court's determination of the defendant's role in the offense is a fact-intensive inquiry that "should be informed by two principles discerned from the Guidelines: first, the defendant's role in the relevant conduct for which she has been held accountable at sentencing, and, second, her role as compared to that of other participants in her relevant conduct." *De Varon*, 175 F.3d at 940. In addition, the sentencing court should consider a nonexhaustive list of factors,

9

including (1) "the degree to which the defendant understood the scope and structure of the criminal activity;" (2) "the degree to which the defendant participated in planning or organizing the criminal activity;" (3) "the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority;" (4) "the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts;" and (5) "the degree to which the defendant stood to benefit from the criminal activity."  U.S.S.G. § 3B1.2, cmt. n.3(C); *see United States v. Presendieu*, 880 F.3d 1228, 1249–50 (11th Cir. 2018).  We have held that a district court commits legal error in this analysis if it relies on any one factor to the exclusion of all others—and specifically, if it denies the defendant a role reduction solely on the ground that he was held accountable only for his own conduct.  *See Cruickshank*, 837 F.3d at 1194–95; *Presendieu*, 880 F.3d at 1250.

Here, Wooding argued that all of the above factors except the last one weighed in favor of a role reduction because although he benefitted the most from filing the fraudulent tax returns, he had no decision-making authority or involvement beyond providing his information and collecting his share of the proceeds; Howard, on the other hand, concocted the scheme as part of his business, did all the planning and organizing, and created and filed the necessary false

10

documents.  The district court denied Wooding's request for a mitigating role adjustment, stating that none of the evidence introduced at trial indicated that Wooding should get a role adjustment and explaining that Wooding's "behavior is his behavior, and that is how the guidelines are calculated in this case, and that is separate and apart from any behavior that would go to the other criminal, Mr. Howard."

It appears from this explanation that the district court may have declined to compare Wooding's role in the relevant conduct to Howard's and may have relied solely on the fact that the Guidelines accounted only for Wooding's own conduct, to the exclusion of any other relevant factor.  If so, this approach amounted to legal error under *De Varon*, in which we emphasized the necessity of comparing the defendant's role to the roles played by others in the relevant conduct, and *Presendieu*, in which we held that it was error to deny a role reduction solely because the defendant had been held accountable only for his own actions.  *See De Varon*, 175 F.3d at 940; *Presendieu*, 880 F.3d at 1250.  On remand, therefore, the district court is instructed to consider whether a role reduction is warranted under the totality of the circumstances, making any necessary factual findings and taking into account the relevant factors outlined in our precedents and the Sentencing Guidelines.  *See* U.S.S.G. § 3B1.2, cmt. n.3(C)); *Presendieu*, 880 F.3d at 1249–50;

11

*Cruickshank*, 837 F.3d at 1195.  We express no opinion as to whether Wooding is entitled to a role reduction on remand.

**AFFIRMED IN PART, VACATED IN PART, AND REMANDED.**