[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

————————————

No. 22-10332

Non-Argument Calendar

————————————

UNITED STATES OF AMERICA,

                                        Plaintiff-Appellee,

*versus*

CHARLES HYDE,
a.k.a Chuck,

                                        Defendant-Appellant.

————————————

Appeal from the United States District Court
for the Southern District of Georgia
D.C. Docket No. 2:19-cr-00005-LGW-BWC-2

_____

Before WILSON, LUCK and DUBINA, Circuit Judges.

PER CURIAM:

Appellant Charles Hyde appeals his convictions for drug and firearm-related offenses and the imposition of his 444-month sentence. Hyde raises several arguments on appeal: (1) that the district court erred by finding his waiver of counsel valid; (2) that the district court erred by failing to declare that 18 U.S.C. §§ 922(g)(1) and (k) violated his Second Amendment rights; (3) that the district court erred by constructively amending his superseding indictment, warranting reversal of his conviction and sentence for brandishing a gun in furtherance of a drug-trafficking crime; (4) that the evidence that he brandished a firearm in furtherance of a drug-trafficking crime was so insufficient as to render this conviction a manifest miscarriage of justice; (5) that the district court erred by sentencing him as an armed career criminal; and (6) that the district court plainly erred by enhancing his sentence without submitting his prior convictions to a jury. Having read the parties' briefs and reviewed the record, we affirm Hyde's convictions and sentence.

I.

We review *de novo* whether a waiver of the right to counsel was knowing and voluntary, which is a mixed question of law and fact. *United States v. Garey*, 540 F.3d 1253, 1268 (11th Cir. 2008) (*en banc*). On appeal, it is the government's burden to show the validity of the waiver. *United States v. Cash*, 47 F.3d 1083, 1088 (11th Cir.

1995).  We have not yet decided whether a *Faretta* challenge raised for the first time on appeal is reviewed *de novo* or for plain error. *See United States v. Owen*, 963 F.3d 1040, 1048 n.5 (11th Cir. 2020).

Under the Sixth Amendment, all criminal defendants are entitled to the assistance of counsel.  U.S. Const. amend. VI.  To waive the right to counsel, the defendant "must clearly and unequivocally assert the right of self-representation," and this waiver must be "knowing, intelligent, and voluntary."  *Owen*, 963 F.3d at 1048 (quotation marks omitted).  When a defendant asks to represent himself, the district court should ideally hold a hearing pursuant to *Faretta v.California*, 422 U.S. 806, 819 (1975) to inform him of the charges against him, the possible punishments, basic trial procedure, and the hazards of self-representation.  *United States v. Kimball*, 291 F.3d 726, 730 (11th Cir. 2002).  This hearing allows the district court to determine that the defendant understands the risks of self-representation and makes a fully informed choice.  *Id.*  "As long as the record establishes that the defendant understood the risks of self-representation and freely chose to face them, the waiver may be valid."  *Owen*, 963 F.3d at 1049 (quotation marks omitted).

We consider eight factors in determining whether the defendant's waiver was knowing and voluntary:

> (1) the defendant's age, health, and education; (2) the defendant's contact with lawyers prior to trial; (3) the defendant's knowledge of the nature of the charges and possible defenses and penalties; (4) the defendant's understanding of the rules of evidence,

procedure and courtroom decorum; (5) the defend-
ant's experience in criminal trials; (6) whether
standby counsel was appointed and, if so, the extent
to which standby counsel aided in the trial; (7) any
mistreatment or coercion of the defendant; and
(8) whether the defendant was attempting to manip-
ulate the trial.

*Kimball*, 291 F.3d at 730-31.  A defendant's waiver may be valid
when most of these factors do not weigh in his favor.  *Id.* at 731.
Importantly, a defendant need not have the skill and experience of
a lawyer to make a valid waiver.  *Faretta*, 422 U.S. at 835.

Here, as an initial matter, although Hyde raises a *Faretta*
challenge for the first time on appeal, we need not decide whether
to review the claim *de novo* or for plain error because his claim fails
even on *de novo* review.  *See Owen*, 963 F.3d at 1048 n.5.  Based on
a review of the record and the *Faretta* inquiry, we conclude that the
district court did not err in concluding that Hyde's waiver of coun-
sel was knowing, intelligent, and voluntary.  The magistrate judge
covered most of the *Kimball* factors at two hearings, warning Hyde
of the risks he faced by proceeding without counsel.  The magis-
trate judge informed Hyde of the nature of the charges against him
by detailing each of the five counts in the superseding indictment;
he addressed the statutory prison terms for each of the charges; he
warned Hyde of the dangers of self-representation; and he ques-
tioned Hyde about his knowledge of basic legal procedures.  The
magistrate judge appointed stand-by counsel, the same counsel

who had represented Hyde for 13 months at that time, and after Hyde insisted that his waiver was entirely voluntary, the magistrate judge granted his motion to proceed *pro se*. "As long as the record establishes that the defendant understood the risks of self-representation and freely chose to face them, the waiver may be valid." *United States v. Stanley*, 739 F.3d 633, 645 (11th Cir. 2014) ("The ultimate test is not the trial court's express advice, but rather the defendant's understanding.").

The trial court also considered the information provided in the psychiatric evaluation requested by defense counsel, which included Hyde's background and history of substance abuse. In the evaluation, Hyde denied any history of mental health symptoms. The psychologist concluded that Hyde was able to understand the nature and consequences of the criminal proceedings against him and assist in his defense and, thus, was competent to stand trial. Based on all these factors, the district court granted Hyde's motion to proceed *pro se*. We conclude, based on this record, that the district court did not err in granting the motion, and we affirm as to this issue.

## II.

Hyde argues that 18 U.S.C. §§ 922(g)(1) and (k) violate his Second Amendment rights. Generally, we review *de novo* the constitutionality of a statute, as it is a question of law. *United States v. Wright*, 607 F.3d 708, 715 (11th Cir. 2010). However, if the issue is raised for the first time on appeal, as it is here, we review for plain error only. *Id.* Under plain-error review, we will reverse a district

court's decision only if "there is: (1) error, (2) that is plain, and (3) that affects substantial rights, and if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Doyle*, 857 F.3d 1115, 1118 (11th Cir. 2017) (quotation marks omitted). An error is plain if it is clear or obvious—if the explicit language of a statute, rule, or precedent from the Supreme Court or this court directly resolves the issue. *United States v. Innocent*, 977 F.3d 1077, 1085 (11th Cir. 2020).

Under the prior panel precedent rule, we are bound by our prior published decisions unless and until they are overruled or undermined to the point of abrogation by the Supreme Court or this court sitting *en banc*. *United States v. Archer*, 531 F.3d 1347, 1352 (11th Cir. 2008). "While an intervening decision of the Supreme Court can overrule the decision of a prior panel of our court, the Supreme Court decision must be clearly on point." *Id.* (quotation marks omitted). "The prior panel precedent rule applies regardless of whether the later panel believes the prior panel's opinion to be correct, and there is no exception to the rule where the prior panel failed to consider arguments raised before a later panel." *United States v. Gillis*, 938 F.3d 1181, 1198 (11th Cir. 2019).

Section 922(g) of Title 18 of the United States Code prohibits anyone who has been convicted of a crime punishable by more than one year "to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition." 18 U.S.C. § 922(g)(1). Section 922(k) of Title 18 of the United States Code makes it unlawful to "receive . . . any firearm

which has had the importer's or manufacturer's serial number removed, obliterated, or altered and has, at any time, been shipped or transported in interstate or foreign commerce." 18 U.S.C. § 922(k).

The prior panel precedent rule bars Hyde's challenge to the constitutionality of § 922(g)(1). Our conclusion in *Rozier* that § 922(g)(1) is a constitutional restriction on a defendant's Second Amendment rights is still binding precedent, and we are bound to follow that panel's decision. *United States v. Rozier*, 598 F.3d 768, 772 (11th Cir. 2010); *Archer*, 531 F.3d at 1352. Further, Hyde cannot establish plain error as to his § 922(k) argument. First, weapons with altered or obliterated serial numbers are not usually possessed by law-abiding citizens for lawful purposes and, thus, fall outside the protection of the Second Amendment. *District of Columbia v. Heller*, 554 U.S. 570, 625, 128 S. Ct. 2783, 2815-16 (2008). Second, neither we nor the Supreme Court have held that § 922(k) is unconstitutional under the Second Amendment. *Innocent*, 977 F.3d at 1085. Thus, we affirm as to this issue.

## III.

We review *de novo* whether a district court's instructions constructively amended an indictment. *United States v. Gutierrez*, 745 F.3d 463, 473 (11th Cir. 2014). Where a defendant did not object to jury instructions at trial, we review for plain error. *United States v. Whyte*, 928 F.3d 1317, 1331 (11th Cir. 2019). Similarly, when a defendant fails to object that the jury instructions

constructively amended the indictment, we review for plain error. *United States v. Madden*, 733 F.3d 1314, 1322 (11th Cir. 2013).

When reviewing a jury instruction for plain error, we will reverse only when the error is so fundamental that it results in a miscarriage of justice. *Gutierrez*, 745 F.3d at 471. The instruction must be an incorrect statement of law that was "probably responsible for an incorrect verdict, leading to substantial injustice." *Whyte*, 928 F.3d at 1332. Finally, when reviewing an alleged constructive amendment, the court's instructions should be viewed in context. *United States v. Castro*, 89 F.3d 1443, 1453 (11th Cir. 1996).

Here, because Hyde did not object at trial to the jury instructions on the basis that they constructively amended the indictment, we review for plain error. *Whyte*, 928 F.3d at 1331; *Madden*, 733 F.3d at 1322. At trial, the government had to show that Hyde either used or carried a firearm during and in relation to a drug trafficking crime or possessed a firearm in furtherance of a drug trafficking crime. 18 U.S.C. § 924(c)(1)(A). Hyde takes issue with the brandishing element, but the record shows that the government sufficiently proved this element, which can be a separate element of either method of a § 924 charge. We conclude that any error in the jury instruction relating to the wording of the charge was not so fundamental that it resulted in a miscarriage of justice. *See Gutierrez*, 745 F.3d at 471. Thus, we affirm as to this issue.

## IV.

We generally review *de novo* a sufficiency of the evidence challenge, asking whether a reasonable jury could have found the

defendant guilty beyond a reasonable doubt. *United States v. House*, 684 F.3d 1173, 1196 (11th Cir. 2012). However, if the defendant did not move for a judgment of acquittal, or otherwise preserve a sufficiency of the evidence challenge below, we will only set aside his conviction if we find a manifest miscarriage of justice, which exists if the evidence on a key element of the offense is so tenuous that a conviction would be shocking. *Id.* Further, we will not upset a jury's decision to credit a witness's testimony unless in the rare circumstance that the testimony is incredible as a matter of law. *United States v. Isaacson*, 752 F.3d 1291, 1304 (11th Cir. 2014) (noting that testimony "is incredible if it concerns facts that the witness physically could not have possibly observed or events that could not have occurred under the laws of nature") (quotation marks omitted). Yet, "when a defendant chooses to testify, he runs the risk that if disbelieved the jury might conclude the opposite of his testimony is true." *United States v. Brown*, 53 F.3d 312, 314 (11th Cir. 1995) (quotation marks omitted).

To obtain a conviction under the "in furtherance of" element requires proof that the firearm "helped, furthered, promoted, or advanced the drug trafficking." *United States v. Timmons*, 283 F.3d 1246, 1252 (11th Cir. 2002). There must be some nexus between the firearm and the drug-selling operation. *Id.* at 1253. Factors that we consider include whether the gun is accessible, loaded, close in proximity to drugs, and the circumstances surrounding the gun's discovery. *Id.*

Here, Hyde does not dispute that he possessed a gun or sold drugs, thus the government need only to have proved that Hyde brandished his gun to further his drug crimes.    18 U.S.C. § 924(c)(1)(A).  The record shows that when the officers arrived at Hyde's home, there were numerous weapons in the room where Hyde kept the drugs.  The handgun Hyde possessed, along with another loaded semiautomatic pistol, two loaded magazines, spare pistol parts, ammunition, and a bulletproof vest, was in the same bedroom as 30 bags of methamphetamine, 4 bags of marijuana, and a digital scale.  This evidence, along with Hyde's testimony, was sufficient for a jury to determine that Hyde brandished a firearm in furtherance of his drug trafficking scheme and was not tenuous enough to make his conviction shocking.  *See House*, 684 F.3d at 1196.  Thus, we affirm as to this issue.

## V.

To preserve an issue for appeal, a defendant "must raise an objection that is sufficient to apprise the trial court and the opposing party of the particular grounds upon which appellate relief will later be sought."  *United States v. Straub*, 508 F.3d 1003, 1011 (11th Cir. 2007) (quotation marks omitted).  However, "once a party has preserved an issue, it 'may make any argument in support of that claim; parties are not limited to the precise arguments they made below.'"  *United States v. Brown*, 934 F.3d 1278, 1306-07 (11th Cir. 2019) (quoting *Yee v. City of Escondido*, 503 U.S. 519, 534, 112 S. Ct. 1522, 1532 (1992)).

Error that is plain must be "clear under current law" for this court to correct it. *United States v. Olano*, 507 U.S. 725, 734, 113 S. Ct. 1770, 1777 (1993). "Clear under current law" means that "at least where the explicit language of a statute or rule does not specifically resolve an issue, there can be no plain error where there is no precedent from the Supreme Court or this Court directly resolving it." *United States v. Chau*, 426 F.3d 1318, 1322 (11th Cir. 2005) (quotation marks omitted). Further, we do not assign "precedential significance" to grants of *certiorari* by the Supreme Court. *See Thompson v. United States*, 924 F.3d 1153, 1156 n.4 (11th Cir. 2019). Until the Supreme Court issues a decision that changes the law, we must follow binding precedent. *Id.*

Federal law binds the construction of the Armed Career Criminal Act ("ACCA"), and state law governs the analysis of the elements of state-law crimes. *United States v. Braun*, 801 F.3d 1301, 1303 (11th Cir. 2015). In *United States v. Jackson*, we held that the federal controlled-substances schedules, in effect at the time of a previous state conviction, govern whether a conviction qualifies as an ACCA predicate. 55 F.4th 846, 856 (11th Cir. 2022).

Here, as an initial matter, we review the district court's finding on this issue for plain error because Hyde's objection that his cocaine charge was dismissed "because of entrapment" did not sufficiently put the trial court, and the government, on notice that he would later appeal his sentence under *Jackson. See Straub*, 508 F.3d at 1011. The record demonstrates that Hyde cannot show that the district court plainly erred because he has cited no binding

precedent holding that his 2003 Florida cocaine conviction does not qualify as an ACCA predicate offense. Instead, Hyde argues that, if the Supreme Court overrules *Jackson*, his 2003 Florida cocaine conviction would no longer serve as an ACCA predicate offense. Although the outcome of the Supreme Court's decision might change our analysis in our earlier panel decision in *Jackson*, a grant of *certiorari* has no precedential value on this case before us. *See Thompson*, 924 F.3d at 1156 n.4. Thus, we conclude the district court did not plainly err in determining that Hyde's 2003 Florida conviction qualifies as an ACCA predicate offense. Accordingly, we affirm as to this issue.

## VI.

Facts that increase mandatory minimum sentences must be submitted to a jury and proven beyond a reasonable doubt. *Alleyne v. United States*, 570 U.S. 99, 103, 133 S. Ct. 2151, 2155 (2013). But the fact of a prior conviction is not an "element" of the crime that must be submitted to the jury. *Almendarez-Torres v. United States*, 523 U.S. 224, 243-47, 118 S. Ct. 1219, 1230-33 (1998); *see Alleyne*, 570 U.S. at 111 n.1, 2159-60 n.1 (declining to revisit *Almendarez-Torres*). In *Almendarez-Torres*, the Supreme Court held that the government need not prove beyond a reasonable doubt that a defendant had prior convictions, or allege those prior convictions in the indictment, to use those convictions to enhance a defendant's sentence. 523 U.S. at 243-47, 118 S. Ct. at 1230-33.

As he concedes, Hyde's argument is foreclosed by *Almendarez-Torres*. We are bound to follow *Almendarez-Torres* until it

is overturned by the Supreme Court or this court sitting *en banc*. *See Archer*, 531 F.3d at 1352.  Thus, the district court was entitled to apply the ACCA enhancement to Hyde's sentence based on his prior convictions.  *See Almendarez-Torres*, 523 U.S. at 226-27.

Based on the aforementioned reasons, we affirm Hyde's convictions and sentence.

**AFFIRMED.**