[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-14182
_____

D.C. Docket No. 6:16-cr-00187-CEM-TBS-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JOHN MATTHEW GAYDEN, JR.,

Defendant-Appellant.


_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(October 9, 2020)

Before MARTIN, ROSENBAUM, and TALLMAN,* Circuit Judges.

TALLMAN, Circuit Judge:

_____

* Honorable Richard C. Tallman, United States Circuit Judge for the Ninth Circuit, sitting
by designation.

Dr. John Gayden, Jr., was convicted of seven counts of unlawful distribution of a controlled substance related to his prior medical practice, which the evidence showed attracted an unusually high volume of drug-seeking patients. He now appeals his conviction and sentence, raising a series of challenges to the district court's pretrial rulings and the sentence imposed. We affirm his conviction and sentence.

I

Gayden practiced in Indialantic, Florida for many years. In October 2011, the Florida Department of Health closed Gayden's medical practice and he later surrendered his medical license. Around the same time, law enforcement began to investigate Gayden's medical practice based on tips that he was prescribing excessive amounts of Oxycodone. Drug Enforcement Administration Special Agent Eva Sala led the investigation of Gayden and his patients by reviewing automated prescription records through Florida's Prescription Drug Monitoring Program (PDMP).

The PDMP is an electronic database administered by the State of Florida. It collects records statewide of controlled substances prescriptions from prescribers and pharmacies into a single location, allowing medical professionals to review a patient's controlled substances prescription history as a way to deter abusive drug-seeking and "doctor shopping." Law enforcement officers may apply to obtain

2

access to the PDMP for criminal pharmaceutical investigations. Once granted access, an officer can electronically search through prescription records and filter them by category to look for trends in the type, frequency, and dosage of prescriptions written by a specific physician or filled at a particular pharmacy.

Through her review of the PDMP, Agent Sala discovered Gayden had a history of irregular prescribing practices, including issuing scripts for opioids in higher quantities, of greater potency, and in greater frequency than the norm. Based on this information, she obtained a state search warrant for twelve of Gayden's patient records, which Gayden had stored at his mother's home. Later, Agent Sala obtained a federal search warrant for the remaining patient records stored there. Law enforcement also issued administrative subpoenas to pharmacies, conducted surveillance on Gayden's clinic, obtained audio and video recordings from undercover patient visits to Gayden's clinic, and obtained information from some of Gayden's patients and employees regarding Gayden's prescribing practices. The investigation disclosed long lines of patients waiting to get into Gayden's office and officers learned the doctor insisted on cash only to pay for his services.

In September 2016, just before the five-year statute of limitations ran, a federal grand jury indicted Gayden on seven counts of unlawful distribution of a controlled substance, in violation of 21 U.S.C. § 841(a)(1). During pretrial

3

proceedings, Gayden moved to dismiss the indictment for unreasonable investigative delay, to suppress the evidence obtained from Agent Sala's search of the PDMP and Gayden's patient records, and to exclude evidence from the government's proposed trial expert, Dr. Gary Reisfield.  The district court denied each of Gayden's motions.

The jury convicted Gayden on all seven counts of the indictment.  At the sentencing phase, the district court calculated Gayden's Sentencing Guideline range between 235 and 293 months of imprisonment.  Gayden presented mitigating evidence concerning his age, medical and mental conditions, and increased vulnerability in a prison setting.  Before pronouncing sentence, the district judge characterized his actions by referring to him as an "arrogant monster."  The district court then sentenced Gayden to 235 months' imprisonment.  Gayden timely filed a notice of appeal.

## II

### A

Gayden first challenges the district court's denial of his motion to dismiss the indictment for pre-indictment delay.  "We review the district court's denial of [a] motion to dismiss the indictment for an abuse of discretion." *United States v. Pielago*, 135 F.3d 703, 707 (11th Cir. 1998).

4

Gayden argues the government's delay in bringing the indictment violated his Fifth Amendment rights.[1]  To establish a violation of a defendant's Fifth Amendment rights, the defendant must show that "pre-indictment delay caused him actual substantial prejudice and that the delay was the product of a deliberate act by the government designed to gain a tactical advantage."  *United States v. Foxman*, 87 F.3d 1220, 1222 (11th Cir. 1996).  Addressing the first element, Gayden asserts that he was prejudiced by his inability to call his mother and his former office manager as trial witnesses, as both individuals died after the relevant conduct but before trial, and by the destruction of records obtained under administrative subpoenas.  Even assuming Gayden shows prejudice here, he still must show a deliberate act by the government designed to gain a tactical advantage over him.

Gayden correctly notes that he is not obligated to prove bad faith on the government's part, but "[t]he critical element is that the government makes a judgment about how it can best proceed with litigation to gain an advantage over the defendant and, as a result of that judgment, an indictment is delayed." *Foxman*, 87 F.3d at 1223 n.2.  Here, Gayden offers conclusory assertions about the

---

[1]    Gayden also raises a Sixth Amendment challenge to the pre-indictment delay.  The Sixth Amendment has not been applied to pre-indictment delay. *See United States v. Marion*, 404 U.S. 307, 315 (1971).  Moreover, Gayden failed to raise this issue below.  We decline to consider this argument for that reason. *Haygood v. Auto-Owners Ins. Co.*, 995 F.2d 1512, 1515 (11th Cir. 1993).

government's timeline and never disputes the government's claim that a two-year delay during the pre-indictment period was at least partially caused by the need to retain a new expert. At best, Gayden's position can be summed up as "the government failed to explain the delay" – which places the burden on the wrong party – and "the government should have completed its investigation more quickly" – which does not adequately show a "tactical delay." The district court did not abuse its discretion in denying Gayden's motion to dismiss the indictment for pre-indictment delay.

## B

Gayden next argues the district court erred in denying his motions to suppress evidence obtained from Agent Sala's search of the PDMP and of patient files stored at Gayden's mother's home. "A denial of a motion to suppress involves mixed questions of fact and law. We review factual findings for clear error, and view the evidence in the light most favorable to the prevailing party. We review *de novo* the application of the law to the facts." *United States v. Barber*, 777 F.3d 1303, 1304 (11th Cir. 2015) (citations omitted).

### 1

Gayden contends the district court should have suppressed the government's evidence obtained from the PDMP because the government should have obtained a

warrant before searching the PDMP.[2]  He argues the third-party doctrine, generally

allowing warrantless searches of information disclosed to others, should not extend

to his prescribing records because the nature of the PDMP raises concerns under

*Carpenter v. United States*, 138 S. Ct. 2206 (2018).

The Fourth Amendment safeguards "[t]he right of the people to be secure in

their persons, houses, papers, and effects, against unreasonable searches and

seizures."  U.S. Const. amend. IV.  It "protects people, not places.  What a person

knowingly exposes to the public, even in his home or office, is not a subject of

Fourth Amendment protection."  *Katz v. United States*, 389 U.S. 347, 351 (1967).

"[T]he application of the Fourth Amendment depends on whether the person

invoking its protection can claim a 'justifiable,' a 'reasonable,' or a 'legitimate

expectation of privacy' that has been invaded by government action."  *Smith v.

Maryland*, 442 U.S. 735, 740 (1979).

Under the third-party doctrine, an individual lacks a reasonable expectation

of privacy "in information 'revealed to a third party and conveyed by [that third

party] to Government authorities, even if the information is revealed on the

assumption that it will be used only for a limited purpose and that confidence

---

[2]    Gayden's opening brief also purports to challenge the government's use of administrative subpoenas.  Gayden argued below that the government improperly used administrative subpoenas to obtain information from pharmacies, airlines, hotels, and a cell service provider.  However, he fails to develop any argument on this subject on appeal.  Accordingly, Gayden has waived any challenge to the administrative subpoena issue.  *See United States v. Sperrazza*, 804 F.3d 1113, 1125 (11th Cir. 2015).

placed in the third party will not be betrayed.'" *Presley v. United States*, 895 F.3d 1284, 1291 (11th Cir. 2018) (quoting *United States v. Miller*, 425 U.S. 435, 443 (1976)). But the Supreme Court in *Carpenter* declined to extend the third-party doctrine to cell-site location information, holding that "a warrant is required in the rare case where the suspect has a legitimate privacy interest in records held by a third party." 138 S. Ct. at 2222. The Court reasoned that "[g]iven the unique nature of cell phone location records, the fact that the information is held by a third party does not by itself overcome the user's claim to Fourth Amendment protection." *Id.* at 2217. It further stressed that its holding "is a narrow one," with specific consideration given to "the unique nature of cell phone location information," *id.* at 2220, which "provides an intimate window into a person's life," *id.* at 2217. Accordingly, *Carpenter* does not, on its face, apply to Gayden's prescribing records.

However, *Carpenter* reiterates that two primary rationales underlie the third-party doctrine: the nature of the information sought and the voluntariness of the exposure to third parties. *Id.* at 2219–20. We consider Gayden's argument through this lens.

First, Gayden maintains no special privacy interest in his prescribing records. Gayden attempts to vicariously assert a privacy interest here based on the sensitive and confidential nature of his patients' medical records. Although

8

individual patients might arguably have a stronger basis to assert such a privacy interest in their *own* medical information, Gayden in his role as the prescriber does not have a similar privacy interest in the prescription records of his patients. "[T]he Fourth Amendment's ultimate touchstone is reasonableness." *Brigham City, Utah v. Stuart*, 547 U.S. 398, 398 (2006) (internal quotation marks omitted). Gayden cannot reasonably assert a privacy interest in his prescribing records that is solely derived from other people's interest in the confidential nature of their own medical information which they choose to disclose to a pharmacist to get filled.

Second, Gayden's disclosure of his prescribing records to third parties was voluntary. Gayden was not required to participate in the PDMP system. Instead, Gayden volunteered by enrolling as a participant in the automated system, which was specifically designed to share his prescription records between health care providers and pharmacies to combat the statewide opioid crisis. Moreover, the third-party doctrine applies "even if the information is revealed on the assumption that it will be used only for a limited purpose and the confidence placed in the third party will not be betrayed." *Miller*, 425 U.S. at 443. It is true that Gayden disclosed his prescribing records on a limited basis, but that does not make the disclosure involuntary. Indeed, the prescriptions Gayden wrote for his patients were, by their very nature, intended to be revealed to others when they were disclosed by the physician and the patients to the pharmacies which filled them.

9

Because on this record Gayden did not have a reasonable expectation of privacy in the prescriptions he wrote for his patients, and because Gayden voluntarily disclosed those prescription records to others through his participation in the computerized tracking system, he fails to establish why *Carpenter*'s rationale should extend to shield from state public health and law enforcement authorities his patient prescription records. Instead, the prescription records are third-party material and the district court did not err in denying his motion to suppress the evidence obtained without a warrant from the PDMP system.

2

Gayden also challenges the search and seizure of the patient medical files Gayden stored at his mother's home. His argument is largely devoted to establishing his standing to challenge the search, although he also minimally argues that the federal search warrant for these records was not supported by probable cause because it relied on tainted information obtained through improper state warrants. This claim is unpersuasive. Even when information obtained from the improper state search warrants is excised from the affidavit supporting the federal search warrant, the federal warrant remains amply supported by other facts establishing probable cause. *United States v. Bush*, 727 F.3d 1308, 1316 (11th Cir. 2013). Moreover, Gayden develops no argument as to why the good-faith exception to the exclusionary rule should not apply. *See United States v. Taylor*,

935 F.3d 1279, 1289–91 (11th Cir. 2019).  The district court did not err in denying on both grounds Gayden's motion to suppress evidence obtained from the patient files stored at his mother's home.

C

Gayden next argues that the district court erred in denying his motion to exclude the government's expert witness, Dr. Gary Reisfield, under the *Daubert* standard enshrined in Federal Rule of Evidence 702.  *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).  Denial of a *Daubert* motion is reviewed for an abuse of discretion, which "places a 'heavy thumb' – 'really a thumb and a finger or two' – 'on the district court's side of the scale.'"  *United States v. Pon*, 963 F.3d 1207, 1219 (11th Cir. 2020) (quoting *United States v. Brown*, 415 F.3d 1257, 1268 (11th Cir. 2005)).  In determining the admissibility of expert testimony, the trial court must consider whether:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (citation omitted).

Gayden contends Dr. Reisfield's testimony that he overprescribed controlled substances should have been excluded because the expert witness reviewed

irrelevant inflammatory information about Gayden before forming his opinion.

Gayden argues Dr. Reisfield's opinion was thus subject to confirmation bias

rendering it unreliable.  But the potential for confirmation bias, to which Gayden

concedes "all persons" are subject, and which the district court properly ruled was

appropriate fodder for cross-examination, does not establish that the district court

abused its discretion in allowing Dr. Reisfield to testify.  The fact that defense

counsel had to make a difficult tactical decision to forgo asking questions to

demonstrate bias in formulating his expert opinion, which would have required

eliciting information that would have harmed Gayden if the jury heard it, is not the

kind of Hobson's choice that mandates striking the expert from testifying.  The

district court did not abuse its discretion in denying Gayden's *Daubert* motion.

### D

Gayden argues that the cumulative effects of the district court's pretrial and

trial rulings deprived him of a fair trial. Having failed to establish any error,

though, Gayden's cumulative error argument similarly fails.

### E

Gayden raises both procedural and substantive challenges to his sentence.

"We review the interpretation of the Sentencing Guidelines *de novo* and any

underlying factual findings for clear error.  We review whether the district court

imposed a substantively reasonable sentence for abuse of discretion." *United States v. Whyte*, 928 F.3d 1317, 1327 (11th Cir. 2019) (citations omitted).

1

First, Gayden contends the district court committed procedural error by improperly calculating his Sentencing Guidelines range to include a drug quantity from earlier prescriptions and documentation of medical necessity under a different formulation of state medical guidelines in violation of the *ex post facto* clause.

> The *ex post facto* clause prohibits the enactment of statutes which: (1) punish as a crime an act previously committed which was innocent when done[;] (2) make more burdensome the punishment for a crime, after its commission; or (3) deprive one charged with a crime of any defense available according to law at the time when the act was committed.

*United States v. De La Mata*, 266 F.3d 1275, 1286 (11th Cir. 2001).  Gayden argues that because Florida amended its standard of care guidance for pain management medicine in October 2010, the district court should not have considered any prescriptions written by Gayden before the amendment date in its drug weight calculation.  *Compare* Fla. Admin. Code r. 64B8-9.013 (2010) *with* Fla. Admin. Code r. 64B8-9.013 (2003).  Gayden carries the burden of showing that the "change in law presents a 'sufficient risk of increasing the measure of punishment attached to the covered crimes'" – which is the "touchstone" of the court's inquiry in an *ex post facto* analysis.  *Peugh v. United States*, 569 U.S. 530, 539 (2013) (citation omitted).  We conclude that Gayden has not made such a

13

showing despite the differences in language in the Florida Administrative Code. Because Gayden's conduct was prohibited under either version of the standard of care, the district court did not violate the *ex post facto* clause by considering his pre-2010 prescriptions in calculating the total drug weight involved in this case.

Second, Gayden contends the district court erred by applying a two-level obstruction of justice enhancement to Gayden's offense level. The Sentencing Guidelines allow for a two-level increase to the offense level where the defendant willfully obstructed or impeded the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and the obstructive conduct was related to the offense of conviction. U.S.S.G. § 3C1.1. The district court considered evidence that Gayden made substantial "updates" to his patient records after the state search warrant for some of his files was executed, but before the federal search warrant for all of his remaining files was served. These "updates" purported to document more fulsome patient examinations to justify writing prescriptions which were not initially recounted in Gayden's contemporaneous patient records. Based on this incriminating conduct, going to the heart of the charges for which he stood trial, the district court did not err in applying the obstruction of justice enhancement.

14

2

Gayden also argues that his sentence was substantively unreasonable.  A "review for substantive unreasonableness involves examining the totality of the circumstances, including an inquiry into whether the statutory factors in [18 U.S.C.] § 3553(a) support the sentence in question." *United States v. Gonzalez*, 550 F.3d 1319, 1324 (11th Cir. 2008).  "We ordinarily expect a sentence within the Guidelines range to be reasonable, and the appellant has the burden of establishing the sentence is unreasonable in light of the record and the § 3553(a) factors." *Id.* The appellate court should only vacate the sentence if it is "left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." *United States v. Irey*, 612 F.3d 1160, 1190 (11th Cir. 2010) (quoting *United States v. Pugh*, 515 F.3d 1179, 1191 (11th Cir. 2008)).

Gayden contends the district court failed to consider mitigating evidence and demonstrated personal animus toward Gayden.  However, the district court did consider the evidence Gayden highlights on appeal.  Moreover, Gayden's sentence is at the low end of his Guidelines range.  The district court's words for Gayden may have been harsh in addressing the impact of Gayden's abusive prescription practices, but they do not leave us with a "definite and firm conviction" that the

15

court committed a clear error of judgment. *Irey*, 612 F.3d at 1190. They

appropriately conveyed the opprobrium of the community harmed by his

misbehavior. The sentence imposed of 235 months was not substantively

unreasonable.

AFFIRMED.