[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

————————————————

No. 22-13216

Non-Argument Calendar

————————————————

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

JESMINA RAMIREZ,

Defendant-Appellant.

————————————————

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:21-cr-20154-JLK-1

————————————————

Before BRASHER, ABUDU, and ANDERSON, Circuit Judges.

PER CURIAM:

Jesmina Ramirez appeals her 63-month sentence for conspiracy to commit money laundering and money laundering. First, she argues that the district court erred by imposing a four-level enhancement under U.S.S.G. § 2S1.1(b)(2)(C) when it concluded she was in the business of laundering money and in doing so relied on the commentary to the guideline. Second, she argues that the court clearly erred by declining to apply a two-level reduction under U.S.S.G. § 3B1.2(b) when it concluded that she did not play a minor role in the offense. Third, she argues that the court plainly erred when it failed to personally address her before imposing its sentence. Finally, she argues that, as a first-time offender, her 63-month, within-guidelines sentence is substantively unreasonable.

I.

Ordinarily, "[w]e review the interpretation of the Sentencing Guidelines *de novo* and any underlying factual findings for clear error." *United States v. Gayden*, 977 F.3d 1146, 1153 (11th Cir. 2020) (quotation marks omitted). However, arguments not raised below are reviewed for plain error. *United States v. Sanchez*, 940 F.3d 526, 537 (11th Cir. 2019). Under plain error review, we will reverse a district court's decision only if "there is: (1) error, (2) that is plain, and (3) that affects substantial rights, and if (4) the error seriously affects the fairness, integrity, or public reputation of judicial

proceedings." *United States v. Doyle*, 857 F.3d 1115, 1118 (11th Cir. 2017) (quotation marks omitted). "[W]here the explicit language of a statute or rule does not specifically resolve an issue, there can be no plain error where there is no precedent from the Supreme Court or this Court directly resolving it." *United States v. Chau*, 426 F.3d 1318, 1322 (11th Cir. 2005) (quotation marks omitted).

To preserve an issue for appeal, a defendant "must raise an objection that is sufficient to apprise the trial court and the opposing party of the particular grounds upon which appellate relief will later be sought." *United States v. Straub*, 508 F.3d 1003, 1011 (11th Cir. 2007) (quotation marks omitted). However, "once a party has preserved an issue, it 'may make any argument in support of that claim; parties are not limited to the precise arguments they made below.'" *United States v. Brown*, 934 F.3d 1278, 1306-07 (11th Cir. 2019) (quoting *Yee v. City of Escondido*, 503 U.S. 519, 534 (1992)).

The Sentencing Guideline for an 18 U.S.C. § 1956(h) violation is found in U.S.S.G. § 2S1.1. Section 2S1.1(a) contains two provisions to calculate a defendant's base offense level. In relevant part, § 2S1.1(a)(2) calculates a defendant's total base offense level by assigning a base offense level of eight and then adding the number of offense levels "corresponding to the value of the laundered funds" from the table in § 2B1.1. After calculating a defendant's base offense level under § 2S1.1(a), courts turn to "Specific Offense Characteristics" under § 2S1.1(b). In relevant part, a four-level increase applies "[i]f (i) subsection (a)(2) applies; and (ii) the

defendant was in the business of laundering funds."    U.S.S.G. § 2S1.1(b)(2)(C).

To determine whether a defendant "was in the business of laundering funds," the Commentary to § 2S1.1(b)(2)(C) instructs courts to examine the "totality of the circumstances" and consider a "non-exhaustive list" of factors, including whether: (i) the defendant regularly engaged in laundering funds; (ii) the defendant engaged in laundering funds for an extended period of time; (iii) the defendant engaged in laundering funds from multiple sources; (iv) the defendant generated a substantial amount of revenue in return for laundering funds; (v) the defendant had one or more previous convictions for money laundering-related offenses; and (vi) during the course of an undercover investigation, the defendant made statements that she engaged in any of the conduct indicating that she was in the business of laundering money.  U.S.S.G. § 2S1.1, comment. (n.4).

Although we have not addressed what it means to be "in the business" of laundering funds, we have, in addressing a similar guideline issue, determined that "in the business" requires "more than isolated, casual, or sporadic activity." *United States v. Saunders*, 318 F.3d 1257, 1265 (11th Cir. 2003) (determining the meaning of "in the business" of receiving and selling stolen property); *see also* Amend. 634, U.S.S.G. Supp. to App'x C, Reason for Amendment (explaining the reason for the four-level "in the business of laundering funds" enhancement and comparing defendants who "routinely engage in laundering funds on behalf of others" to a

professional "fence," as both "warrant substantial additional punishment because they encourage the commission of additional criminal conduct").

A sentencing court may consider the Sentencing Commission's interpretation of a Guideline as contained in the Commentary to the extent that a Guideline is "genuinely ambiguous." *United States v. Dupree*, 57 F.4th 1269 (11th Cir. 2023) (*en banc*).

Here, even assuming that this issue of whether the district court erred in relying on the Guidelines Commentary is preserved, because the term, "in the business," can bear multiple meanings, it is genuinely ambiguous, so the district court did not err when it considered the Commentary's list of non-exhaustive factors.

The district court did not clearly err in imposing a four-level enhancement to Ramirez's sentence when it concluded that she was in the business of laundering funds. First, considering the non-exhaustive factors in the Commentary to § 2S1.1(b)(2)(C), Ramirez's conduct was not isolated, casual, or sporadic. *Saunders*, 318 F.3d at 1265. She cashed 134 checks. Second, she cashed those 134 checks over a period of more than 2 years, up to several a week. Third, throughout those two years, although she only received checks from Chang and Gonzalez, the checks were drawn on the bank accounts of multiple sham durable medical equipment ("DME") companies. Fourth, from those multiple sham DME companies, she generated $34,302.00, which is a substantial amount, especially when compared to her legal revenue. Although she had no criminal history and did not make any statements about

her conduct during a government investigation (the fifth and sixth factors), given the other factors, and based on the totality of the circumstances, the district court did not err in finding that Ramirez was "in the business of laundering funds," such that a four-level increase applied. *See* U.S.S.G. § 2S1.1 comment. n.4(B)(i) (vi). Accordingly, we affirm as to this issue.

## II.

We review the district court's determination of a defendant's role for clear error. *United States v. De Varon*, 175 F.3d 930, 934 (11th Cir. 1999) (*en banc*). The sentencing court's factual findings "may be based on evidence heard during trial . . . undisputed statements in the presentence report, or evidence presented at the sentencing hearing." *Saunders*, 318 F.3d at 1271 n.22 (quotation marks omitted). "The district court's choice between two permissible views of the evidence as to the defendant's role in the offense will rarely constitute clear error [s]o long as the basis of the trial court's decision is supported by the record and does not involve a misapplication of a rule of law." *United States v. Cruickshank*, 837 F.3d 1182, 1192 (11th Cir. 2016) (quotation marks omitted, alteration in original). "The defendant bears the burden of establishing his minor role in the offense by a preponderance of the evidence." *Id.* We, however, may affirm for any reason supported by the record, even if not relied upon by the district court. *United States v. Chitwood*, 676 F.3d 971, 975 (11th Cir. 2012).

The Sentencing Guidelines provide for a two-level reduction if a defendant was a minor participant in the criminal activity, a

four-level reduction if the defendant was a minimal participant, and a three-level reduction for cases falling between those two roles. U.S.S.G. § 3B1.2. The reductions apply to the defendants whose role in committing an offense makes them "substantially less culpable than the average participant in the criminal activity." *Id.*, comment. (n.3(A)).

A minimal participant "plays a minimal role in the criminal activity" and is "plainly among the least culpable of those involved in the conduct of a group." *Id.*, comment. (n.4). "[T]he defendant's lack of knowledge or understanding of the scope and structure of the enterprise and of the activities of others is indicative of a role as minimal participant." *Id.* A minor participant is one "who is less culpable than most other participants in the criminal activity, but whose role could not be described as minimal." *Id.*, comment. (n.5). The determination of whether to apply a mitigating-role adjustment "is heavily dependent upon the facts of the particular case." *Id.*, comment. (n.3(C)).

The Commentary to the Sentencing Guidelines provide the following list of "non-exhaustive" factors for a court to consider in determining whether to apply a role reduction:

> (i) the degree to which the defendant understood the scope and structure of the criminal activity;
>
> (ii) the degree to which the defendant participated in planning or organizing the criminal activity;

(iii) the degree to which the defendant exercised deci-sion-making authority or influenced the exercise of decision-making authority;

(iv) the nature and extent of the defendant's partici-pation in the commission of the criminal activity, in-cluding the acts the defendant performed and the re-sponsibility and discretion the defendant had in per-forming those acts;

(v) the degree to which the defendant stood to benefit from the criminal activity.

*Id.*

Two principles should guide a district court's consideration of a defendant's role: (1) the defendant's role in the relevant con-duct for which she has been held accountable at sentencing, and (2) her role as compared to that of other participants in her relevant conduct. *De Varon*, 175 F.3d at 940.

As to the first principle, "the district court must assess whether the defendant is a minor or minimal participant in relation to *the relevant conduct attributed to the defendant* in calculating [her] base offense level." *Id.* at 941 (emphasis added). Thus, a defendant is not entitled to a mitigating role adjustment when she can point to a broader criminal scheme that she was a minor participant in but was not held accountable for. *Id.* "[S]uch an adjustment only makes sense analytically if the defendant can establish that [her] role was minor as compared to the relevant conduct attributed to her." *Id.* (emphasis omitted).

As to the second principle, the district court may also measure the defendant's role against the other discernable participants in the relevant conduct. *Id.* at 944-45. The district court need not compare a defendant's conduct with that of her codefendants because, in many cases, measuring the defendant's role against the relevant conduct for which she was held accountable at sentencing will be dispositive. *United States v. Bernal-Benitez*, 594 F.3d 1303, 1321 n.25 (11th Cir. 2010). "The district court should look to other participants only to the extent that they are identifiable or discernible from the evidence." *De Varon*, 175 F.3d at 944. It is also only participants who engaged in the relevant conduct attributed to the defendant who are relevant to any comparisons. *United States v. Martin*, 803 F.3d 581, 591 (11th Cir. 2015). Additionally, "[e]ven if a defendant played a lesser role than the other participants, that fact does not entitle [her] to a role reduction since it is possible that none are minor or minimal participants." *Id.* (quotation marks omitted).

Here, the district court did not clearly err in denying Ramirez's request for a minor role reduction. *De Varon*'s first principle asks whether a defendant "played a relatively minor role in the conduct for which she has already been held accountable—not a minor role in any larger criminal conspiracy." *De Varon*, 175 F.3d at 944. The record reflects that Ramirez understood the scope of the scheme, was important to the scheme, and was held accountable for that conduct alone. *See* U.S.S.G. § 3B1.2, comment. n.3(C). When she cashed checks, she knew that the proceeds were from a broader scheme to defraud Medicare, Medicaid, and other private

health insurance companies.   *See* U.S.S.G. § 3B1.2, comment. n.3(c)(i).  Her use of burner phones, coded language, and cashing of checks for services that she did not perform bolsters this inference.  Despite knowing that her actions were aiding the health care fraud, Ramirez laundered $786,992.52 over the course of more than two years and sought to increase her participation.   She benefitted from the criminal activity, generating $34,302 for herself. *See* U.S.S.G. § 3B1.2, comment. n.3(C)(v).

Her role was also not minor when compared to other participants in the conduct for which she was held accountable.  She argues that she was less culpable than Garces, Chang, and Gonzalez, larger players in the health care fraud conspiracy.  However, the relevant inquiry is whether Ramirez played a minor role in laundering the $786,992.52 for which she was held accountable. *See De Varon*, 175 F.3d at 940.  Although Chang and Gonzalez gave Ramirez direction, the record reflects that her actions as a check casher were important to the laundering.  Even though Garces, Chang, and Gonzalez also participated in laundering the $786,992.52, it does not follow that Ramirez played a minor role, because it is possible that none of the players were minor or minimal participants. *See Martin*, 803 F.3d at 591.  We reject Ramirez's argument that the district court focused exclusively on whether her conduct was essential to the success. For example, the district court emphasized: "134 transactions that she was involved in over two years is extremely—is an extreme involvement." Dist. Ct. Doc. 176 at 13.  Based on the record before the district court, the court did

not clearly err in denying Ramirez a minor role reduction. Accordingly, we affirm as to this issue.

## III.

Where a defendant does not object at sentencing to the district court's denial of her right to allocution, we review for plain error. *Doyle*, 857 F.3d at 1118. Concessions of law are not binding on this Court. *United States v. Colston*, 4 F.4th 1179, 1187 (11th Cir. 2021).

Federal Rule of Criminal Procedure 32 requires that a court, before imposing a sentence, address the defendant personally to permit her to speak or present any information to mitigate the sentence. Fed. R. Crim. P. 32(i)(4)(A)(ii). A court's failure to address the defendant about whether she wished to make a statement is an error that is plain. *United States v. George*, 872 F.3d 1197, 1207 (11th Cir. 2017). Generally, we presume that a court's failure to allow a defendant to allocute affects her substantial rights if the defendant's sentence could somehow be reduced, unlike, for example, a defendant who received a mandatory minimum sentence. *Id.* This is because a defendant's allocution could persuade the court to vary downward, even if her sentence is at the bottom of the Guidelines range. *Doyle*, 857 F.3d at 1120-21. We have noted that, even the most persuasive counsel may not "speak for a defendant as the defendant might, with halting eloquence, speak for [herself]." *George*, 872 F.3d at 1208 (quotation marks omitted). A district court's denial of a defendant's right to allocute affects the fairness, integrity,

and public reputation of judicial proceedings. *United States v. Perez*, 661 F.3d 568, 586 (11th Cir. 2011).

Accordingly, when a district court fails to give a defendant a chance to allocute before imposing a sentence, we generally vacate the sentence and remand so the district court can give the defendant a chance to speak. *George*, 872 F.3d at 1209. A defendant, however, is not entitled to a new sentencing hearing on remand. *Id.* Instead, she is put in "the position [s]he was in on the day of h[er] original sentence hearing" and is given the opportunity to allocute that she was originally denied. *Id.* (quotation marks omitted). She may not reassert or reargue any of her objections to the presentence investigation report, file new objections, or file a new sentencing memorandum. *Doyle*, 857 F.3d at 1121. The defendant may, however, argue for a particular sentence in light of the 18 U.S.C. § 3553(a) factors, the record, and any allocution. *See id.* She may also present evidence of her post-sentencing rehabilitation, and such evidence may, in the district court's discretion, support a variance from her advisory Guidelines range. *Id.*

Additionally, upon a remand to the district court for resentencing, the district court shall apply the Sentencing Guidelines that were in effect on the date of the defendants' pre-appeal sentencing, along with any guideline amendments in effect on such date. 18 U.S.C. § 3742(g); *see also* U.S.S.G.§ 1B1.11(a), (b)(2).

As the government concedes, the district court erred in not personally addressing Ramirez, and remand is needed to allow her an opportunity to allocute. Further, because the district court will

have an opportunity to reconsider the 18 U.S.C. § 3553(a) factors after allowing Ramirez an opportunity to be heard, we do not reach Ramirez's remaining argument regarding the substantive reasonableness of her sentence. Accordingly, we vacate as to this issue and remand for resentencing.

**AFFIRMED IN PART, VACATED AND REMANDED IN PART.**