**NOT FOR PUBLICATION**

# In the
# United States Court of Appeals
## For the Eleventh Circuit

————————————————

No. 23-12067

Non-Argument Calendar

————————————————

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

JOSE HUGO ESTUPINAN,

*Defendant-Appellant.*

————————————————

Appeals from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:22-cr-20571-JEM-1

————————————————

————————————————

No. 23-12137

Non-Argument Calendar

————————————————

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

2                    Opinion of the Court                    23-12067

*versus*

ALCIBIADES JIMENEZ-FLORES,

                                        *Defendant-Appellant.*

————————————

Appeals from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:22-cr-20571-JEM-3
————————————

————————————

No. 23-12114
Non-Argument Calendar
————————————

UNITED STATES OF AMERICA,

                                        *Plaintiff-Appellee,*

*versus*

RAMON GABRIEL BAUTISTA-FELICIANO,
    a.k.a. Ramon Bautista,

                                        *Defendant-Appellant.*

————————————

Appeals from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:22-cr-20571-JEM-2
————————————

Before BRANCH, MARCUS, and WILSON, Circuit Judges.

PER CURIAM:

Jose Hugo Estupinan, Ramon Bautista-Feliciano, and Alcibiades Jimenez-Flores appeal their convictions for conspiracy to possess with intent to distribute cocaine while on board a vessel subject to the jurisdiction of the United States and possession with intent to distribute cocaine while on board a vessel subject to the jurisdiction of the United States.  On appeal, the appellants raise various issues: (1) Bautista-Feliciano argues for the dismissal of his indictment based on the government's delay in presenting him to a magistrate judge and in obtaining a criminal complaint; (2) Estupinan argues for the dismissal of his indictment because he was denied his Sixth Amendment right to counsel at a critical stage of the proceedings; (3) the appellants collectively challenge the district court's jurisdiction, claiming the government lacked authority to prosecute them for a felony committed on the high seas under the Maritime Drug Law Enforcement Act ("MDLEA") because the conduct took place in the Dominican Republic's exclusive economic zone ("EEZ"); (4) Jimenez-Flores argues that there is no subject matter jurisdiction because the government failed to prove the vessel was without nationality; and (5) Bautista-Feliciano and Jimenez-Flores argue that their due process rights were violated because their offenses bore no connection to the United States.  After thorough review, we affirm.

## I.

Generally, we review the district court's denial of a motion to dismiss the indictment for abuse of discretion.  *United States v. Gayden*, 977 F.3d 1146, 1150 (11th Cir. 2020).  When reviewing for

abuse of discretion, we will affirm even if we would have reached a different conclusion, so long as the district court's ruling fell within a range of possible conclusions and did not make a clear error of judgment or apply an incorrect legal standard. *United States v. Lyons*, 403 F.3d 1248, 1255 (11th Cir. 2005). We review constitutional, jurisdictional, and statutory interpretation questions *de novo*. *United States v. Alfonso*, 104 F.4th 815, 820 (11th Cir. 2024).

Under our prior-panel-precedent rule, a prior panel's holding is binding on all subsequent panels unless and until it is overruled or undermined to the point of abrogation by the Supreme Court or by our Court sitting en banc. *United States v. Canario-Vilomar*, 128 F.4th 1374, 1381 (11th Cir. 2025). We've "'categorically rejected an overlooked reason or argument exception to the prior-panel precedent rule.'" *Id.*

## II.

First, Bautista-Feliciano and Estupian have waived their arguments for the dismissal of their indictments based on government delay and the denial of the right to counsel. As we've long held, "[a] valid guilty plea . . . renders irrelevant -- and thereby prevents the defendant from appealing -- the constitutionality of case-related government conduct that takes place before the plea is entered." *Class v. United States*, 583 U.S. 174, 182 (2018). Further, "'[a] defendant who enters a plea of guilty waives all non-jurisdictional challenges to the constitutionality of the conviction, and only an attack on the voluntary and knowing nature of the plea can be sustained.'" *United States v. De La Garza*, 516 F.3d 1266, 1271 (11th Cir.

2008); *United States v. Pierre*, 120 F.3d 1153, 1155 (11th Cir. 1997) ("A defendant's unconditional plea of guilty, made knowingly, voluntarily, and with the benefit of competent counsel, waives all non-jurisdictional defects in that defendant's court proceedings." (citation modified)). So, a defendant who does not dispute the validity of his plea "cannot complain about the specific facts of his detention." *United States v. Castillo*, 899 F.3d 1208, 1214 (11th Cir. 2018). A defendant's unconditional, valid plea of guilty also waives his Sixth Amendment speedy trial claim, *Pierre*, 120 F.3d at 1155, and "may waive a claim even of structural error." *United States v. Williams*, 29 F.4th 1306, 1314 (11th Cir. 2022).

Here, Estupinan and Bautista-Feliciano's valid guilty pleas prevent them from appealing the constitutionality of case-related government conduct that took place prior to the entering of their plea -- including Estupinan's claim of delay in his presentment to a magistrate judge and in obtaining a criminal complaint, and Bautista-Feliciano's claim of denial of the right to counsel. Indeed, our decisions in *Castillo* and *De La Garza* establish that a defendant's guilty plea with no conditions waives all non-jurisdictional challenges to the constitutionality of the convictions and to his detention, and Estupinan and Bautista-Feliciano do not dispute the validity of their guilty pleas nor suggest their pleas were conditional. Thus, we affirm as to these issues without reaching their merits.

## III.

Next, we find no merit to the appellants' challenges to the district court's jurisdiction based on the MDLEA. Under Article I

of the Constitution, Congress has "three distinct grants of power: (1) the power to define and punish piracies, (the Piracies Clause); (2) the power to define and punish felonies committed on the high Seas, (the Felonies Clause); and (3) the power to define and punish offenses against the law of nations (the Offences Clause)." *Alfonso*, 104 F.4th at 820 (citation modified); U.S. Const. art. I, § 8, cl. 10.

The MDLEA makes it a crime to "knowingly or intentionally . . . possess with intent to manufacture or distribute, a controlled substance" on board "a [covered] vessel subject to the jurisdiction of the United States," and to conspire to do so. 46 U.S.C. §§ 70503(a)(1), (e)(1), 70506(b). The Act defines a "vessel subject to the jurisdiction of the United States" as including "a vessel without nationality." *Id.* § 70502(c)(1)(A). A "vessel without nationality" includes "a vessel aboard which the master or individual in charge fails, on request of an officer of the United States authorized to enforce applicable provisions of United States law, to make a claim of nationality or registry for that vessel," as well as "a vessel aboard which no individual, on request of an officer . . . claims to be the master or is identified as the individual in charge, and that has no other claim of nationality or registry under paragraph (1) or (2) of subsection (e)." *Id.* § 70502(d)(1)(B), (D). A claim of nationality or registry includes "(1) possession on board the vessel and production of documents evidencing the vessel's nationality . . . ; [or] (2) flying its nation's ensign or flag." *Id.* § 70502(e)(1)–(2).

We've held that § 70502(d)(1) is not an exhaustive list of every circumstance in which a vessel lacks nationality. *United States*

*v. Nunez*, 1 F.4th 976, 984 (11th Cir. 2021). To determine whether a vessel is without nationality, we look to customary international law. *Id.* A vessel usually makes its nationality known by flying a nation's flag or carrying registration papers. *Id.* at 985. The MDLEA "applies even though the act is committed outside the territorial jurisdiction of the United States." 46 U.S.C. § 70503(b).

We've found a vessel to be stateless and subject to the jurisdiction of the United States under § 70502(d)(1)(B) where it "flew no flag, carried no registration paperwork, and bore no markings indicating its nationality"; despite repeated questioning, the captain concealed himself among the crew and never identified himself or the vessel's nationality; and the crew, when questioned, "made no claims about the boat's nationality or registry." *United States v. De La Cruz*, 443 F.3d 830, 832 (11th Cir. 2006). Similarly, in *De La Garza*, we found a vessel stateless where the defendant stipulated that the vessel was not flying any flag and had no indicia of nationality, and he pleaded guilty at his plea hearing after indicating he understood the United States claimed jurisdiction over the vessel. 516 F.3d at 1272. Likewise, in *Cabezas-Montano*, we found a vessel stateless where Coast Guard members asked the crew to identify the master of the vessel, no one did so, and no one responded when asked individually if anyone wished to make a claim of nationality for the vessel. 949 F.3d at 589–90. We said the questions were sufficient, even though the Coast Guard did not ask for the "individual in charge," because that individual had an opportunity to make a claim of nationality for the vessel when the Coast Guard asked if anyone wished to do so. *Id.* at 589 n.14.

In *Nunez*, the Coast Guard approached a vessel with four men on board and asked who was the pilot or master of the vessel. 1 F.4th at 981. One crew member responded that they all took turns. *Id.* We noted that, because no one claimed to be the master of the vessel, the Coast Guard was not required to inquire as to the nationality of the vessel. *Id.* at 985–86. We held that the vessel was stateless because no registry papers were onboard, no markings indicated the nationality of the vessel, and no one, master or crew-member, made a verbal claim of the vessel's nationality. *Id.* We noted that, under international law, there are no set standards for what questions authorities must ask in order to determine whether a vessel is stateless. *Id.* at 987. We added that typically some form of examination by authorities is conducted in order to determine a vessel's nationality, but international treatises do not address how to treat a vessel without a master and no nationality markings. *Id.*

In *Alfonso*, the defendants appealed their convictions under the MDLEA, where the U.S. Coast Guard had seized a vessel in the Dominican Republic's EEZ, challenging the constitutionality of the MDLEA as applied to them under the Felonies Clause. 104 F.4th at 818–19. As for their constitutional challenges, we noted that we "repeatedly have upheld the MDLEA as a valid exercise of Congress's power 'to define and punish . . . Felonies on the high Seas.'" *Id.* at 820. We also held that "international law does not limit the Felonies Clause." *Id.* at 826. We concluded that a nation's EEZ is "part of the 'high seas' for purposes of the Felonies Clause in Article I of the Constitution," and thus, "enforcement of the MDLEA in EEZs is proper." *Id.* at 823, 827.

We affirmed this holding in *Canario-Vilomar*, in which two appellants -- one seized in a vessel 37 nautical miles north of Panama, the other seized in a vessel 145 nautical miles north of Colombia -- challenged the district court's jurisdiction. 128 F.4th at 1376–79. There, they argued that the MDLEA exceeds Congress's authority under the Felonies Clause of the Constitution and that one appellant's arrest did not occur on the high seas because he was arrested in Colombia's EEZ. *Id.* We relied on *Alfonso* to conclude that Congress was not constrained by international law in crafting the MDLEA. *Id.* at 1381 ("[W]e reject [appellants'] contention that Congress was constrained by international law in crafting its definition of a stateless vessel or in defining the boundaries of the high seas."). Again relying on *Alfonso*, we rejected an appellant's argument "that Congress could not reach him merely because he chose to traffic drugs in Colombia's EEZ rather than farther out into the open ocean." *Id.* at 1382.

Under the MDLEA, the question of whether a vessel is subject to the jurisdiction of the United States is a jurisdictional question and not an element of the offense. *United States v. Iguaran*, 821 F.3d 1335, 1336 (11th Cir. 2016). Jurisdictional issues under the MDLEA "are preliminary questions of law to be determined solely by the trial judge." 46 U.S.C. § 70504(a). Parties may stipulate to facts that support a jurisdictional finding but may not stipulate to jurisdiction. *Iguaran*, 821 F.3d at 1337.

Here, the appellants' argument that the government lacked authority to prosecute them for a felony committed on the high

seas under the MDLEA because the conduct took place in the Dominican Republic's EEZ is foreclosed by our prior holdings in *Alfonso* and *Canario-Vilomar*, which held that EEZs are part of the high seas and that enforcement of the MDLEA in EEZs is proper. Because these decisions have not been abrogated or overruled by the Supreme Court or this Court sitting en banc, we remain bound by them. As for Jimenez-Flores's argument that the court lacked subject matter jurisdiction because the government failed to prove the vessel was without nationality, the government sufficiently established that the vessel was stateless for purposes of subject matter jurisdiction. Among other things, Jimenez-Flores admitted in his factual proffer and presentence investigation report that the vessel had no indicia of nationality, none of the men on board claimed to be the master or captain of the vessel, and no claim of nationality was made for the vessel, which relieved the Coast Guard of having to confirm the nationality of the vessel. *Nunez*, 1 F.4th at 986. Under our precedent, these facts were sufficient to establish the vessel was stateless for purposes of subject matter jurisdiction. We affirm as to these issues as well.

IV.

Finally, we are unpersuaded by Bautista-Feliciano and Jimenez-Flores' claim that their due process rights were violated through the MDLEA. We've rejected these arguments many times before. In *Canario-Vilomar*, an appellant argued "that the MDLEA violates principles of due process because it allows the United States to assert jurisdiction over foreign nationals for conduct that

bears no nexus with the United States," although the appellant acknowledged that we had rejected similar arguments. 128 F.4th at 1382. We agreed with the appellant that the argument was "foreclosed by our binding precedent." *Id.* at 1382–83 (citing *United States v. Campbell*, 743 F.3d 802, 810 (11th Cir. 2014)). In so holding, we emphasized that we "have explained repeatedly" that "the conduct proscribed by the MDLEA need not have a nexus to the United States because universal and protective principles support its extraterritorial reach." *Id.* at 1383 (citation modified).

In addition, we have rejected as-applied challenges to the constitutionality of MDLEA under the Felonies Clause as to vessels on the high seas engaged in drug-trafficking crimes without a nexus to the United States. *See Cabezas-Montano*, 949 F.3d at 587.

Here, Bautista-Feliciano and Jimenez-Flores's arguments are foreclosed by controlling authority holding that the MDLEA need not have a nexus to the United States. We've consistently held that the MDLEA is a constitutional exercise of Congressional power under the Felonies Clause for the prosecution of drug trafficking offenses on the high seas, even without a nexus to the United States. Further, their as-applied challenge to their MDLEA conviction -- claiming that their offenses lacked a nexus to the United States -- is also foreclosed by our binding precedent. We affirm on these issues too.

**AFFIRMED.**